Oleg Rivkin, Esq. (OR 1331)
RIVKIN LAW GROUP pllc
800 Third Avenue, Suite 2800
New York, New York 10022
Tel.: (212) 231-9776
or@rivkinlawgroup.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
                                                                         :
ALEXANDER BELYA,                                                         :
                                                                         :
                               Plaintiff,                                :
                                                                         :        INDEX NO.:
                    -against-                                            :
                                                                         :
HILARION KAPRAL a/k/a METROPOLITAN                                       :
HILARION; NICHOLAS OLKHOVSKIY; VICTOR                                    :        **COMPLAINT**
POTAPOV; SERGE LUKIANOV; DAVID STRAUT;                                   :
ALEXANDRE ANTCHOUTINE; MARK MANCUSO;                                     :        JURY TRIAL DEMANDED
GEORGE TEMIDIS; SERAFIM GAN; PAVEL                                       :
LOUKIANOFF; BORIS DMITRIEFF; EASTERN                                     :
AMERICAN DIOCESE OF THE RUSSIAN                                          :
ORTHODOX CHURCH OUTSIDE OF RUSSIA; THE                                   :
SYNOD OF BISHOPS OF THE RUSSIAN                                          :
ORTHODOX CHURCH OUTSIDE OF RUSSIA, and                                   :
JOHN DOES 1 through 100,                                                 :
                                                                         :
                               Defendants.                               :
                                                                         :
-------------------------------------------------------------------------X

        Plaintiff ALEXANDER BELYA by and though his attorneys, Rivkin Law Group pllc, 800

Third Avenue, New York, New York 10022, as and for his Complaint against Defendants,

HILARION KAPRAL a/k/a METROPOLITAN HILARION, NICHOLAS OLKHOVSKIY,

VICTOR POTAPOV, SERGE LUKIANOV, DAVID STRAUT, ALEXANDRE ANTCHOUTINE,

MARK MANCUSO, GEORGE TEMIDIS, SERAFIM GAN, PAVEL LOUKIANOFF, BORIS

DMITRIEFF, EASTERN AMERICAN DIOCESE OF THE RUSSIAN ORTHODOX CHURCH

OUTSIDE OF RUSSIA, THE SYNOD OF BISHOPS OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, and JOHN DOES 1 through 100, states as follows:

## INTRODUCTION

This is a case of egregious defamation. The Plaintiff, Alexander Belya, an Orthodox Christian archimandrite, was elected by the Synod of Bishops in New York to the position of Bishop of Miami. After his appointment was confirmed by the Synod in Moscow, Plaintiff was publicly and falsely accused by a group of dissenters of forging documents which evidenced his appointment to the position of Bishop of Miami, including the signature of the head of the Synod in New York. The charge of forgery was then widely and deliberately disseminated within the Christian Orthodox community, forever destroying Plaintiff's good name and reputation.

Few things are as damaging to the reputation of a religious leader – particularly one who, like Plaintiff, has devoted his entire life to the Church – than the charge that he is a forger and a swindler.  That is precisely what the Defendants had done, publicly, and in the most calculated and deliberate manner imaginable.

Although this case involves religious institutions and persons of the cloth, this is a straightforward defamation action, the resolution of which entails no involvement whatever in religious dogma or practice. The threshold issue in this action is whether the documents Plaintiff is alleged to have forged are in fact genuine, as has already been confirmed by a forensic expert. Other issues are Defendants' knowledge of the falsity of their charge of forgery, the wide-spread dissemination of the defamatory statements and Plaintiff's damages.

## PARTIES AND JURISDICTION

1.      Plaintiff Alexander Belya (also, Oleksandr Belya) ("Alexander") is an Archimandrite of the Greek Orthodox Church of America, and is the spiritual head of the

Cathedral of St. Matrona of Moscow, located in Dania Beach, Florida, as well as of St. Nicholas Monastery, located in Fort Myers, Florida. Plaintiff resides in Dania Beach, Florida.

2.      Defendant Eastern American Diocese of the Russian Orthodox Church Outside of Russia ("EAD") is a diocese within The Russian Orthodox Church Outside of Russia ("ROCOR") encompassing the eastern part of the United States, including New York. ROCOR is a semi-autonomous part of the Russian Orthodox Church, headquartered in New York City, with jurisdiction over approximately 400 parishes and an estimated membership of more than 400,000 parishioners. Defendant EAD is a 501(c)(3) non-profit organization.

3.      Defendant The Synod of Bishops of the Russian Orthodox Church Outside of Russia ("ROCOR Synod") is a 501(c)(3) non-profit organization that functions as the executive arm of ROCOR, headquartered in New York, New York.  According to ROCOR Synod's website, ROCOR Synod has thirteen (13) members and is headed by Defendant Hilarion.

4.      Defendant Hilarion Kapral (also, Igor Kapral) a/k/a Metropolitan Hilarion ("Hilarion"), is the head of ROCOR, EAD and ROCOR Synod, having the title of Metropolitan Hilarion of Eastern America and New York, and First Hierarch of the Russian Orthodox Church Outside of Russia. Hilarion resides in New York. According to EAD's website, Hilarion is the "Ruling Bishop" of Defendant EAD.

5.      Defendant Nicholas Olkhovskiy ("Olkhovskiy") is the Secretary of Defendant EAD and a member of the EAD's Diocesan Council, which oversees all of the operation of the diocese.  Olkhovskiy is a bishop of ROCOR, having the title of Bishop of Manhattan and Vicar Bishop of the Eastern American Diocese and New York.  Olkhovskiy resides in New York.

6.      Defendant Victor Potapov ("Potapov") is an archpriest within the EAD, having the title of the Dean of the Capital Region. Potapov is also a member of the EAD's Diocesan Council. Potapov resides in Tacoma Park, Maryland.

7.     Defendant Serge Lukianov ("Lukianov") is an archpriest within the EAD, having the title of the Dean of New Jersey.  Lukianov is also a member of the EAD's Diocesan Council. Lukianov resides in New Jersey.

8.     Defendant David Straut ("Straut") is an archpriest within the EAD, having the title of Rector of St. Elizabeth the New-Martyr Church. Straut is also a member of the EAD's Diocesan Council. Straut resides in Sommerville, New Jersey.

9.     Defendant Alexandre Antchoutine ("Antchoutine") is an archpriest within the EAD, having the title of the Dean of Long Island & the Hudson Valley.  Antchoutine is also a member of the EAD's Diocesan Council. On information and belief, Antchoutine resides in Glen Cove, New York.

10.    Defendant Mark Mancuso ("Mancuso") is an archpriest within the EAD, having the title of the Dean of the Carolinas and Tennessee. Mancuso is also a member of the EAD's Diocesan Council. Mancuso resides in North Carolina.

11.    Defendant George Temidis ("Temidis") is a priest within the EAD, and is a member of the EAD's Diocesan Council. Temidis resides in Wallkill, New York.

12.    Defendant Serafim Gan ("Gan") is an archpriest within the EAD and the rector of St. Seraphim of Sarov Memorial Church in Sea Cliff, New York.  Gan is also the Chancellor of the ROCOR Synod, in charge of all of its administrative functions.  Gan resides in New York, New York.

13.    Defendant Pavel Loukianoff (also known as Peter) ("Loukianoff") is a member of ROCOR Synod, and the head of the Diocese of Chicago and Mid-America, having the title of Archbishop Peter of Chicago and Mid-America.  On information and belief, Loukianoff resides in Illinois.

14.     Defendant Boris Dmitrieff (also known as "Kyrill") ("Dmitrieff") is a member of ROCOR Synod, having the title of the Second Deputy of the President of the Synod of Bishops, as well as the Secretary of the Synod of Bishop. Dmitrieff resides in California.

15.     Defendants John Does 1 through 100 are persons whose names are unknown at the present time who committed wrongful and actionable acts against Plaintiff complained of herein.

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The action is between citizens of different states and the matter in controversy exceeds $75,000.

17.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2) and (3). A substantial part of the events giving rise to Plaintiff's claims occurred in this District. Each of the Defendants is subject to the Court's personal jurisdiction under C.P.L.R 301 and/or 302.

18.     Plaintiff  is a citizen and resident of the State of Florida.

19.     Defendant EAD is an 501(c)(3) non-profit organization with its principal place of operations in New York, New York. EAD operates over thirty Russian Orthodox churches and monasteries in New York.

20.     Defendant ROCOR Synod is a 501(c)(3) non-profit organization with its principal place of operations in New York, New York.

21.     Personal jurisdiction over each of the non-domiciliary individual Defendants is proper under C.P.L.R 302(1), as each such Defendant transacts business within the State of New York and provides services within the State of New York, and the causes of action asserted herein arise out of such business and services.

## FACTS

22.     Plaintiff Alexander is an Archimandrite of the Greek Orthodox Church of America.

23.     During the timeframe encompassing the events relevant to this Complaint, Alexander was an archimandrite of the Russian Orthodox Church.  He held the position of the Dean of the Florida District of ROCOR and had for nine years served as a priest within the Russian Orthodox Church.  Alexander's work as both a missionary and an administrator had earned him a number of awards and accolades from ROCOR and other local Orthodox churches.

24.     Prion to his arrival to the United States, Alexander served as an archimandrite of the Russian Orthodox Church in the Czech Republic and Slovakia. He came to this country following Hilarion's request to the Archbishop of Prague in September 2011 to permit Alexander "*to join the clergy of Eastern American and New York Dioceses .. and allow him canonical excardination*."

25.     In August 2018, Alexander was nominated by the ROCOR Synod for the position of the Vicar of Florida. On August 15, 2018, Alexander was informed by Hilarion, in his capacity as the head of ROCOR, that "[*a*]*t the last meeting of the Synod of Bishops we proposed your candidacy for the position of the Vicar of Florida*." The letter praised Alexander for the fact *that* "[*during the seven years of* [*his*] *service … the largest church in the region – the Cathedral of St Matrona of Moscow in Miami – has been shining magnificently…*" Hilarion further wrote that while "[*m*]*any Bishops have supported* [*the nomination*] *some are still undecided and want to learn more about you in personal communication.*"

26.     On December 6-10, 2018, the ROCOR Synod held a meeting in New York. During that meeting, Alexander was elected by a majority of the Bishops to the position of  Bishop of Miami.

27.     Hilarion personally congratulated Alexander on his election as the Bishop of Miami.

28.     By letter dated December 10, 2018 ("December 10 Letter"), Hilarion informed Kirill, the Patriarch of Moscow and All Russia of Alexander's election as the Bishop of Miami, as follows:

> On December 6-10, the meeting of the Synod of Bishops of the Orthodox Church Outside of Russia in expanded format took place in New York.  I am happy to share the joyful news – by a majority vote two Vicar Bishops have been elected to the diocese entrusted to me.  They are most worthy candidates.
>
> …
>
> -   Archimandrite Alexander (Belya) – the hegumen of Stavropegic Monastery of St. Nicholas in Fort Myers, the Archpriest of the Cathedral of St. Matrona of Moscow in Miami, the head of the Diocese of Florida, elected as the Bishop of Miami.

29.     The December 10 Letter was signed by Hilarion and stamped with his official seal.

30.     Under the rules governing the relationship between the Russian Orthodox Church in Russia and ROCOR (which, during the Soviet era functioned as separate entities), elections of ROCOR Bishops must be approved by the Holy Synod of the Russian Orthodox Church, located in Moscow ("Moscow Synod"), the head of which is Patriarch Kirill.  Thus, Hilarion's December 10 Letter to Kirill concluded as follows: "***In the nearest future Your Holiness will be sent requests for the confirmation of the candidates at the next meeting of the Holy Synod of the Russian Orthodox Church.***"

31.     Also on December 10, 2018, Hilarion informed Alexander of the election results at the ROCOR Synod meeting.  Hilarion wrote to Alexander as follows:

> I hereby inform you that at the meeting of the Synod of Bishops of the Russian Orthodox Church Outside of Russia on December 6 this year, your candidacy has been considered and by a majority vote you have been elected the Vicar Bishop of the Eastern American diocese for the state of Florida. The members of the Synod pointed out the need to preserve the traditions of the Russian Church Outside of Russia, namely:

1. The calendar published by the Cathedral the Julian Calendar dates should be included.

2. To discontinue the practice of general confession at the Cathedral of St. Matrona of Moscow in Miami.

3. The Cathedral of St. Matrona of Moscow should be registered according to the Statute of the Russian Orthodox Church Outside of Russia.

4. The Easter service should be performed in white vestments.

After your correction of all the comments, the date of episcopal consecration will be set.

32.     The ROCOR Synod appointed Archbishop Gavriil of Montreal and Canada ("Gavriil") to report on the implementation of the "corrections" noted in Hilarion's December 10 letter to Alexander.

33.     In early January 2019, Gavriil reported to Hilarion, as follows:

I have had the opportunity to check the comments indicated at the Synod and hereby confirm that all of them have been corrected within the shortest possible time. In this regard, I do not see any obstacles to approve the date of consecration of Archimandrite Alexander (Belya), elected as the Vicar Bishop for Miami, of which I hereby inform Your Eminence.

34.     Having obtained a confirmation from Gavriil that all "corrections" have been implemented, Hilarion, on January 11, 2019, wrote to Patriarch Kirill in Moscow as follows ("January 11 Letter"):

I hereby respectfully inform Your Holiness that at the latest expanded meeting of the Archbishop Synod of the Russian Orthodox Church Outside of Russia (December 6-10, 2018) Archimandrite Alexander (Belya) – hegumen of Stavropegic Monastery of St. Nicholas in Fort Myers, the Archpriest of the Cathedral of St. Matrona of Moscow in Miami, the head of Diocese of Florida district – was elected as Bishop of Miami, Vicar of the Eastern American Diocese.

At the same meeting, the member of the Synod recommended Archimandrite Alexander correct several comments. Since Father Alexander has corrected everything within the shortest time possible, I hereby ask Your Holiness to

approve this candidacy at the next meeting of the Holy Synod of the Russian Orthodox Church.

35.     The January 11 Letter was signed by Hilarion and stamped with his official seal.

36.     In July 2019, Alexander was contacted by the Moscow Patriarchate and invited to an audience with Patriarch Kirill. The audience took place on July 16, 2019.  During the audience, Alexander responded to Kirill's questions, including those that concerned matters raised in Hilarion's letter of December 10, 2018. At the conclusion of the audience, Kirill indicated that the Moscow Synod would approve Alexander's appointment as Bishop of Miami.

37.     On August 30, 2019, the decision of the Moscow Synod confirming its approval of the decision of the ROCOR Synod appointing Alexander as Bishop of Miami was published in the official website of the Moscow Patriarchate (patriarchia.ru).

38.     On the same day, August 30, 2019, Hilarion, in a telephone conversation with Alexander, congratulated him on the confirmation by the Moscow Synod of his election as Bishop of Miami.

39.     Throughout the entire nomination-election-confirmation period, there existed a group of detractors within ROCOR who vehemently opposed Alexander's appointment as the Bishop of Miami (the "Olkhovskiy Group").  The Olkhovskiy Group was led by Defendant Olkhovskiy, whose position as the Bishop of Manhattan and Vicar Bishop [*i.e.*, the head] of the Eastern American Diocese and New York – the Defendant EAD – is one of substantial prominence and influence within ROCOR. The Olkhovskiy Group was not numerous enough to successfully block Alexander's nomination and election at the ROCOR Synod level.  So they resorted to falsehood, intimidation, and fraud.

40.     The first indication that persons within ROCOR were attempting to thwart Alexander's appointment was that, on August 31, 2019, in reporting the results of the Moscow

Synod's meeting, ROCOR's official online publication (synod.com) omitted any reference to the confirmation of Alexander as Bishop of Miami.

41.     As events unfolded, it became clear that, within days of the August 30 publication of the Moscow Synod confirmation of Alexander's appointment, the Olkhovskiy Group – which included Defendants Olkhovskiy,  Potapov, Lukianov, Straut, Antchoutine, Mancuso, Temidis, Gan, Loukianoff and Dmitrieff – put pressure on Hilarion to undo Alexander's appointment. Hilarion succumbed to the pressure.

42.     On September 3, 2019, Defendants Olkhovskiy,  Potapov, Lukianov, Straut, Antchoutine, Mancuso and Temidis, all members of the EAD's Diocesan Council and writing under the letterhead of Defendant EAD, wrote a letter to the ROCOR Synod and Hilarion ("September 3 Letter").  The September 3 Letter stated in part as follows:

> The confirmation by the Holy Synod of the Russian Orthodox Church of "the election of Archimandrite Alexander (Belya) as Bishop of Miami, vicar of the Eastern American diocese" and the preliminary study of the latest complaints received from Florida concerning him, resulted in serious discussion at the meeting of the Diocesan Council of the Eastern American Diocese, which was held on Tuesday, September 3rd of this year.  With a sense of responsibility for our Church, we feel we must respectfully and deferentially bring forward this concern and report the following to the Synod of Bishops.
>
> 1) It turns out that Metropolitan Hilarion of Eastern America & New York **knew nothing about the written appeals directed to Moscow** containing a request for confirmation of the "episcopal election" of the Archimandrite by the Synod of Bishops **(which never took place)**.  The Diocesan Council members have examined the content of these letters, which, **as stated by His Eminence**, were drawn up in an irregular manner.  For example, the "request" does not contain the appropriate citation from the decision of the Synod of Bishops, nor does it contain a biography of the cleric "elected."
>
> 2) The letter submitted with the signature of Archbishop Gabriel of Montreal & Canada **raises doubts as well**, as it was not issued numbered or dated.  In addition, it was not printed on the official letterhead of the Most Reverend Gabriel. Nevertheless, we understand that the Holy Synod, having received

the appeal supposedly from our First Hierarch, had no reason to **doubt the authenticity** of the written request of His Eminence.

…

From all this is it clear that not only are the above-mentioned petition letters invalid, but the candidacy of Archimandrite Alexander (Belya) for the episcopacy cannot possibly be given serious consideration, due to the current situation in the Florida Deanery and the submission so many serious complaints against him. Thereby, we humbly appeal to our ruling hierarch to suspend Archimandrite Alexander (Belya) from performing any clerical functions, to temporarily remove him and the warden of the Cathedral of the Blessed Matrona of Moscow in Miami and St. Nicholas Monastery from all duties and church obediences until the completion of the investigation, and, to formally open such investigation. We ask the eminent members of the Synod of Bishops to remove the candidacy of Archimandrite Alexander (Belya) permanently and to never consider it against in the future. We also ask that the Synod to ascertain the circumstances of the confirmation of the **non-existent "election**."

(Emphasis added).

43.    The September 3 Letter thus accused Alexander of falsifying Hilarion's signature on Hilarion's December 10 Letter to Patriarch Kirill, in which Hilarion informed Kirill of Alexander's election by the ROCOR Synod to the position of Bishop of Miami.

44.    The September 3 Letter also accused Alexander of falsifying the January 11 Letter, in which Hilarion again informed Patriarch Kirill of Alexander's election by the ROCOR Synod to the position of Bishop of Miami, and requested that the Moscow Synod "approve this candidacy at the next meeting of the Holy Synod of the Russian Orthodox Church."

45.    The September 3 Letter also accused Alexander of fabricating the results of the ROCOR Synod's election on December 6-10, 2018, by describing the election as "non-existent," and saying that it "never took place."

46.    The September 3 Letter also accused Alexander of falsifying the letter from Archbishop Gavriil of Montreal and Canada to Hilarion, in which he confirmed that all of the

questions posed to Alexander have been "corrected" and stated that he saw "no obstacles to approve the date of consecration."

47.     In sum, the September 3 Letter labeled Alexander a forger and a swindler of the most egregious kind.

48.     The September 3 Letter also made clear that Hilarion, the author and signer of the December 10 and January 11 Letters, went along, consented to, authorized and participayed in the scheme to deny his authorship of and signatures on the December 10 and January 11 Letters, and thereby publicly falsely denounce Alexander as a forger and swindler.

49.     The September 3 Letter was sent to the ROCOR Synod in New York City. On information and belief, every member of the ROCOR Synod (which, according to its website, numbers thirteen)  received a copy of the letter.

50.     On information and belief, the September 3 Letter was also forwarded by members of the Olkhovskiy Group and by members of the ROCOR Synod to other members of ROCOR, including parishes, churches, monasteries and other institutions within ROCOR, as well as to online media outlets.

51.     After the issuance of the September 3 Letter, Alexander was denied all access to Hilarion, which was controlled by Defendants Olkhovskiy and Gan. Numerous requests by Alexander and members of his congregation to meet with Hilarion were summarily denied by Hilarion's office.

52.     By letter dated the same day, September 3, 2019, Defendant Hilarion issued an order to Alexander suspending him from performing his duties and functions as the spiritual leader of his parish.

53.     As was intended by Olkhovskiy and his cohorts, it didn't take long for the false accusations to spread to the Internet. Indeed, Defendant Gan, the Chancellor of the ROCOR Synod, himself posted on his church's social media site on September 16, 2019, as follows:

> Alleged ROCOR episcopal nominee Fr. Alexander Belya, already confirmed by the ROC Synod, had not been elected by the ROCOR Synod and a letter informing about his nomination sent to Moscow was a forgery.  The priest in question was suspended, internal investigation was started.

54.     *Orthodox News*, a major aggregator of news in Eastern Orthodox Christianity, with thousands of followers in the Orthodox Christian world, posted online:

> Alleged #ROCOR episcopal nominee Fr. Alexander Belya, already confirmed by the #ROC # Synod, had not been elected by the ROCOR Synod and a letter informing about his nomination sent to #Moscow was a forgery. The #priest in question was suspended, internal investigation was started.

55.     *Helleniscope*, another major Orthodox Christian publication, wrote on its website:

> This past summer, Alexander also forged a letter from His Eminence Metropolitan Hilarion (Kapral), the First Hierarch of ROCOR, attempting to get himself confirmed by the Holy Synod of the Moscow Patriarchate as a bishop-elect for ROCOR in America.

56.     Numerous Internet posts and articles followed, many quoting unnamed "sources" at ROCOR. Soon the charge that Alexander was a forger – and a forger of the signature of the head of ROCOR himself, no less! – spread like wildfire on the Internet. Every Orthodox Christian publication reported it. These spilled into social media platforms, like Facebook and Twitter, of churches, religious organizations and parishioners.

57.     On September 14, 2019, Defendant Hilarion issued a public decree suspending Alexander from his priestly duties, pending an "investigation," and prohibiting all members of Alexander's parish from writing letters and appeals to Alexander, and threatening with "sanction" those who did not obey.

58.     Alexander's reputation and good name – which he had spent a lifetime building – was thus ruined. Having no future within ROCOR and, more importantly, being unable to serve his parish as a ROCOR priest, Alexander left ROCOR and joined the Greek Orthodox Church, ultimately becoming an Archimandrite of the Greek Orthodox Church of America.

### FIRST CLAIM FOR RELIEF
### (Defamation Against All Defendants)

59.     Plaintiff repeats and realleges all prior allegations as if fully set forth herein.

60.     The defamatory statements which are the predicate for the claim of defamation that are contained in the September 3 Letter ("the Defamatory Statements") are the following:

a)      That Plaintiff falsified and forged Defendant Hilarion's signature on Hilarion's December 10, Letter to Patriarch Kirill;

b)      That Plaintiff fabricated the content of the December 10 Letter from Defendant Hilarion to Patriarch Kirill, specifically, that Plaintiff had been elected by the ROCOR Synod to the position of Bishop of Miami;

c)      That Plaintiff transmitted the purportedly fabricated and forged December 10 Letter to Patriarch Kirill;

d)      That Plaintiff falsified and forged Defendant Hilarion's signature on the January 11 Letter to Patriarch Kirill;

e)      That Plaintiff fabricated the content of the January 11 Letter to Patriarch Kirill, specifically, that ROCOR Synod had elected Plaintiff to the position of Bishop of Miami, and that Hilarion was requesting that the Moscow Synod "approve this candidacy at the next meeting of the Holy Synod of the Russian Orthodox Church;"

f)      That Plaintiff transmitted the purportedly fabricated and forged January 11 Letter to Patriarch Kirill;

g)      That Plaintiff falsified and forged the letter from Archbishop Gavriil of Montreal and Canada to Hilarion, which confirmed that all of the questions posed to Plaintiff had been "corrected," and stated that there were "no obstacles to approve the date of consecration."

h)      That Plaintiff duped Patriarch Kirill and the Moscow Synod into confirming his election to the position of Bishop of Miami.

61.     Each of the Defamatory Statements is false.

62.     Each of the Defendants knew of the falsity of the Defamatory Statements at the time of their drafting and publication, and each Defendant intended that the Defamatory Statements be published and disseminated.

63.     The September 3 Letter containing the Defamatory Statements was signed by Defendants Olkhovskiy, Potapov, Lukianov, Straut, Antchoutine, Mancuso, Temidis, each of whom participated in, encouraged and approved the drafting and publication of the Defamatory Statements.

64.     Defendant Hilarion participated in the drafting and publication of the September 3 Letter containing the Defamatory Statements. Indeed, the key and necessary predicate for the publication and dissemination of the September 3 Letter was Hilarion's willingness to falsely deny that he had authored and signed both the December 10 Letter and the January 11 Letter to Patriarch Kirill.  The Olkhovskiy Group's scheme to undo Plaintiff's appointment as Bishop of Miami by means of the September 3 Letter would not have gotten off the ground but for Hilarion's willingness to lie about the authenticity his own letters. Hilarion was thus the key participant in the drafting and publication of the Defamatory Statements.

65.     Defendant Loukianoff participated in the drafting of the September 3 Letter containing the Defamatory Statements and encouraged and approved its publication. By taking

part in the composition and publication of the Defamatory Statements, Defendant Loukianoff is liable for defamation complained of herein.

66.     Defendant Dmitrieff participated in the drafting of the September 3 Letter containing the Defamatory Statements and encouraged and approved its publication. By taking part in the composition and publication of the Defamatory Statements, Defendant Dmitrieff is liable for defamation complained of herein.

67.     Defendant Gan participated in the drafting of the September 3 Letter containing the Defamatory Statements and encouraged and approved its publication. By taking part in the composition and publication of the Defamatory Statements, Defendant Gan is liable for defamation herein.

68.     Further, Defendant Gan knowingly published and disseminated the Defamatory Statements on the social media site of his church, St. Seraphim Russian Orthodox Church.

69.     The publication of the Defamatory Statements was multi-fold, including the following:

a)     The delivery of the September 3 Letter containing Defamatory Statement to ROCOR Synod;

b)     The dissemination by members of the Olkhovskiy Group and members of ROCOR Synod of Defamatory Statement to other members of ROCOR, including parishes, churches, monasteries and other institutions within ROCOR;

c)     The dissemination of the Defamatory Statements by the Olkhovskiy Group and members of ROCOR Synod to online publications with the knowledge and intent that the Defamatory Statements would be spread through online media to hundreds of thousands of parishioners in the Orthodox Christian community nationwide and worldwide; and

d) The publication of the Defamatory Statements by Defendant Gan on his church's social media site, from which it spread through the internet, as was Gan's intent.

70. Defendants ROCOR Synod and EAD are vicariously liable for the actions of the individual Defendants for the publication of the Defamatory Statements. Each individual Defendant held a high level managerial position with the one or more of ROCOR Synod or EAD, as follows:

a) Defendant Hilarion is the head of ROCOR Synod and the head (Ruling Bishop) of EAD;

b) Defendant Olkhovskiy is a bishop of ROCOR, having the title of Bishop of Manhattan and Vicar Bishop of the Eastern American Diocese and New York, and is also the Secretary of EAD and a member of the EAD's Diocesan Council;

c) Defendant Potapov is an archpriest within the EAD and a member of the EAD's Diocesan Council;

d) Defendant Lukianov is an archpriest within the EAD and a member of the EAD's Diocesan Council;

e) Defendant Straut is an archpriest within the EAD and a member of the EAD's Diocesan Council;

f) Defendant Antchoutine is an archpriest within the EAD and member of the EAD's Diocesan Council;

g) Defendant Mancuso is an archpriest within the EAD and a member of the EAD's Diocesan Council;

h) Defendant Temidis is a priest of within the EAD and a member of the EAD's Diocesan Council;

i)  Defendant Gan is an archpriest within the EAD and the Chancellor of ROCOR Synod;

j)  Defendant Loukianoff is an archbishop of ROCOR and a member of ROCOR Synod;

k)  Defendant Dmitrieff is an archbishop of ROCOR and a member of ROCOR Synod.

71.  On information and belief each of the individual Defendants is also an employee of one or more of ROCOR Synod and EAD, holding a "managerial" position within one or more of these organizations. Each individual Defendant acted within the scope of his employment by one or more of ROCOR Synod and EAD, thus rendering ROCOR Synod and EAD vicariously liable for the wrongful actions of the individual Defendants complained of herein.

72.  In drafting and publishing the Defamatory Statements, each individual Defendant acted knowingly and with intent and malice or reckless disregard of the truth, thus rendering their employers, ROCOR Synod and EAD vicariously liable for the wrongful actions complained of herein.

73.  Defendant Hilarion, the highest ranking authority of ROCOR Synod and EAD, authorized, participated in, consented to and ratified the intentional and malicious conduct of the members of the Olkhovskiy Group complained of herein, thus rendering Hilarion and the organizations of which he is in charge – Defendants ROCOR Synod and EAD – liable for compensatory and punitive damages herein.

74.  As a direct and proximate result of Defendants' wrongful and malicious conduct set forth herein, Plaintiff has been damaged.

75.  Plaintiff's general damages include, but are not limited to, those resulting from his severely impaired reputation and standing in the community, humiliation, mental anguish and

suffering. Plaintiff's general damages further include out-of-pocket loss to Plaintiff which includes legal fees, including those incurred in the prosecution of this action.

76.     Plaintiff's damages further include special damages in the form of loss of income, resulting from the drastic decrease of the membership in his church which was the direct and proximate result of the publication of the Defamatory Statements.  Plaintiff's loss of income as of the filing of this Complaint is in the amount of $250,000.

77.     The actions of each of the Defendant complained of herein were done with malice or reckless disregard of the truth.

78.     Each of the Defendants is liable for punitive damages in an amount to be determined by the jury.

79.     By reason of the foregoing, Plaintiff is entitled to recover from Defendants, and each of them, (a) general damages in an amount to be determined by the jury but not less than $5,000,000; (b) special damages in the amount of $250,000, and (c) punitive damages in an amount to be determined by the jury.

**SECOND CLAIM FOR RELIEF**
**(Defamation *Per Se*)**

80.     Plaintiff repeats and realleges all prior allegations as if fully set forth herein.

81.     Under Florida law, which applies here, written defamatory statement rises to the level of defamation *per se* if it (a) charges that a person has committed an infamous crime; (b) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (c) tends to injure one in his trade or profession.

82.     By making and publishing the Defamatory Statements, specifically, that Plaintiff had committed forgery, Defendants have charged that Plaintiff has committed an infamous crime.  Florida law expressly defines forgery as an infamous crime for the purposes of defamation *per se*.

19

83.     By making and publishing the Defamatory Statements, Defendants have subjected Plaintiff to hatred, distrust, ridicule, contempt and disgrace.

84.     By making and publishing the Defamatory Statements, Defendants have injured Plaintiff in his trade and profession.

85.     Defendants' wrongful conduct complained of herein was done with actual malice or with reckless disregard of the truth.

86.     As a result of the wrongful and malicious conduct of the Defendants complained of herein, Plaintiff has been damaged.

87.     Plaintiff's general damages include, but are not limited to, those resulting from his severely impaired reputation and standing in the community, humiliation, mental anguish and suffering.   Plaintiff's general damages further include out-of-pocket loss to Plaintiff which includes legal fees, including those incurred in the prosecution of this action.

88.     Plaintiff's damages further include special damages in the form of loss of income, resulting from the drastic decrease of the membership in his church which was the direct and proximate result of the publication of the Defamatory Statements.  Plaintiff's loss of income as of the filing of this Complaint is in the amount of $250,000.

89.     Each of the Defendants is liable for punitive damages in an amount to be determined by the jury.

90.     By reason of the foregoing, Plaintiff is entitled to recover from Defendants, and each of them, (a) general damages in an amount to be determined by the jury but not less than $5,000,000; (b) special damages in the amount of $250,000; and (c) punitive damages in an amount to be determined by the jury.

### THIRD CLAIM FOR RELIEF
#### (False Light)

91.     Plaintiff repeats and realleges all prior allegations as if fully set forth herein.

92.     Florida law, which applies to this action, recognizes the tort of false light.

93.     Defendants published the Defamatory Statements.

94.     The Defamatory Statements are false.

95.     Each of the Defendants acted with knowledge of the falsity of the Defamatory Statements, or with reckless disregard as to their falsity.

96.     The Defamatory Statements were about the Plaintiff.

97.     The Defamatory Statements are highly offensive to a reasonable person.

98.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained actual damages..

99.     Plaintiff's damages include, but are not limited to, those resulting from his severely impaired reputation and standing in the community, humiliation, mental anguish and suffering.   Plaintiff's general damages further include out-of-pocket loss to Plaintiff which includes legal fees, including those incurred in the prosecution of this action.

100.     By reason of the foregoing, Plaintiff is entitled to recover from Defendants, and each of them, (a) general compensatory damages in an amount to be determined by the jury but not less than $5,000,000; and (b) punitive damages in an amount to be determined by the jury.

### AS AND FOURTH CLAIM FOR RELIEF
### (Defamation by Inuendo/Implication)

101.     Plaintiff repeats and realleges all prior allegations as if fully set forth herein.

102.     Florida law, which applies to this action, recognizes the tort of defamation by inuendo.

103.     The Defamatory Statements falsely implied the following:

a)     That Plaintiff falsified Defendant Hilarion's signature on Hilarion's December 10, Letter to Patriarch Kirill;

b)    That Plaintiff fabricated the content of the December 10 Letter from Defendant Hilarion to Patriarch Kirill, specifically, that Plaintiff had been elected by the ROCOR Synod to the position of Bishop of Miami;

c)    That Plaintiff transmitted the purportedly fabricated and forged December 10 Letter to Patriarch Kirill;

d)    That Plaintiff falsified Defendant Hilarion's signature on the January 11 Letter to Patriarch Kirill;

e)    That Plaintiff fabricated the content of the January 11 Letter to Patriarch Kirill, specifically, that ROCOR Synod had elected Plaintiff to the position of Bishop of Miami, and that Hilarion was requesting that the Moscow Synod "approve this candidacy at the next meeting of the Holy Synod of the Russian Orthodox Church;"

f)    That Plaintiff transmitted the purportedly fabricated and forged January 11 Letter to Patriarch Kirill;

g)    That Plaintiff falsified and forged the letter from Archbishop Gavriil of Montreal and Canada to Hilarion, which confirmed that all of the questions posed to Plaintiff had been "corrected" and stated that there were "no obstacles to approve the date of consecration."

h)    That Plaintiff duped Patriarch Kirill and the Moscow Synod into confirming his election to the position of Bishop of Miami.

104.    Defendants acted with actual malice or with reckless disregard for the falsity of the Defamatory Statements.

105.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained actual damages..

106.     Plaintiff's damages include, but are not limited to, those resulting from his severely impaired reputation and standing in the community, humiliation, mental anguish and suffering.   Plaintiff's general damages further include out-of-pocket loss to Plaintiff which includes legal fees, including those incurred in the prosecution of this action.

107.     By reason of the foregoing, Plaintiff is entitled to recover from Defendants, and each of them, (a) general compensatory damages in an amount to be determined by the jury but not less than $5,000,000; and (b) punitive damages in an amount to be determined by the jury.

### FIFTH CLAIM FOR RELIEF
### (Vicarious Liability Against Defendants ROCOR Synod and EAD under Florida Law)

108.     Plaintiff repeats and realleges all prior allegations as if fully set forth herein.

109.     Under Florida law, which applies to this case, claims for vicarious liability for defamation are pleaded as a separate cause of action.

110.     Defendants ROCOR Synod and EAD are vicariously liable for the actions of the individual Defendants for the publication of the Defamatory Statements.

111.     Each individual Defendant held a high level managerial position with the one or more of ROCOR Synod or EAD, as follows:

a)      Defendant Hilarion is the head of ROCOR Synod and the Ruling Bishop of the EAD;

b)      Defendant Olkhovskiy is a bishop of ROCOR, having the title of Bishop of Manhattan and Vicar Bishop of the Eastern American Diocese and New York, and is also the Secretary of the EAD and a member of the EAD's Diocesan Council;

c)      Defendant Potapov is an archpriest within the EAD and a member of the EAD's Diocesan Council;

d)  Defendant Lukianov is an archpriest within the EAD and a member of the EAD's Diocesan Council;

e)  Defendant Straut is an archpriest within the EAD and a member of the EAD's Diocesan Council;

f)  Defendant Antchoutine is an archpriest within the EAD and member of the EAD's Diocesan Council;

g)  Defendant Mancuso is an archpriest within the EAD and a member of the EAD's Diocesan Council;

h)  Defendant Temidis is a priest of within the EAD and a member of the EAD's Diocesan Council;

i)  Defendant Gan is an archpriest within the EAD and the Chancellor of the ROCOR Synod;

j)  Defendant Loukianoff is an archbishop of ROCOR and a member of the ROCOR Synod;

k)  Defendant Dmitrieff is an archbishop of ROCOR and a member of the ROCOR Synod.

112.   On information and belief each of the individual Defendants is also an employee of one or more of ROCOR Synod or EAD, holding a "managerial" position within one or more of these organizations. Each individual Defendant acted within the scope of his employment by one or more of ROCOR Synod and EAD, thus rendering ROCOR Synod and EAD vicariously liable for the wrongful actions of the individual Defendants complained of herein.

113.    By reason of foregoing Plaintiff is entitled to recover from Defendants ROCOR Synod and EAD the same damages he is entitled to recover from the individual Defendants under Claims One through Four herein, including, but not limited to (a) general damages in an amount

to be determined by the jury but not less than $5,000,000; (b) special damages in the amount of $250,000, and (c) punitive damages in an amount to be determined by the jury.

**WHEREFORE**, Plaintiff demands judgment as follows:

A.      On the First Claim for Relief, a judgment against all Defendants, jointly and severally, for (1) general damages in an amount to be determined by the jury but not less than $5,000,000; (2) special damages in the amount of $250,000; and (3) punitive damages in an amount to be determined by the jury;

B.      On the Second Claim for Relief, a judgment against all Defendants, jointly and severally, for (1) general damages in an amount to be determined by the jury but not less than $5,000,000; (2) special damages in the amount of $250,000; and (3) punitive damages in an amount to be determined by the jury;

C.      On the Third Claim for Relief, a judgment against all Defendants, jointly and severally, for (1) general compensatory damages in an amount to be determined by the jury but not less than $5,000,000; and (b) punitive damages in an amount to be determined by the jury;

D.      On the Fourth Claim for Relief, a judgment against all Defendants, jointly and severally, for (1) general compensatory damages in an amount to be determined by the jury but not less than $5,000,000; and (b) punitive damages in an amount to be determined by the jury;

E.      On the Fifth Claims for Relief, a judgment against Defendants ROCOR Synod and EAD in an amount equivalent to the amount of the judgment against individual Defendants under Claims One through Four, including, but not limited to (a) general damages in an amount to be determined by the jury but not less than

$5,000,000; (b) special damages in the amount of $250,000, and (c) punitive damages in an amount to be determined by the jury;

F.      For costs and disbursements of this actions, including reasonable attorneys' fee;

G.      For interest as may be permitted by applicable law;

H.      For such other and further relief as this Court may deem just and proper.


Dated: August 18, 2020
        New York, New York


                                        RIVKIN LAW GROUP pllc


                                        By:_____
                                                Oleg Rivkin (OR 1331)
                                                Principal

                                                800 Third Avenue, Suite 2800
                                                New York, New York 10022
                                                Tel: (212) 231-9776
                                                *or@rivkinlawgroup.com*

                                                *Attorneys for Plaintiff*
                                                *Alexander Belya*