

800 Third Avenue, Suite 2800 • New York, New York 10022 • +1 212.231.9776 • www.rivkinlawgroup.com

Oleg Rivkin
t. 212.231.9776
m. 201.362.4100
or@rivkinlawgroup.com

*VIA EMAIL (copy to Court by ECF)*                                December 1, 2020

Donald J. Feerick, Jr., Esq.
Feerick Nugent MacCartney pllc
96 South Broadway
South Nyack, New York 10960

      Re:    Belya v. Hilarion et al.
               Case No. 20-cv-6597-SDNY (VM)

Dear Mr. Feerick,

    We are counsel for the plaintiff in the above-referenced matter. In accordance with the Court's Individual Rules, we respond to your letter, dated November 24, 2020. We address your points in the order presented.

1.    <u>Ecclesiastical Doctrine Has No Application To This Case</u>.

    It is settled law that the doctrine of ecclesiastical abstention does not bar claims which can be resolved by "neutral principles of law." *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F.Supp.3d 394, 407-408 (S.D.N.Y. 2019) (courts may resolve "secular disputes involving religious entities … to the extent they are amenable to the application of neutral principles of law"). In *Kavanagh v. Zwilling*, 997 F. Supp.2d 241, 249-250 (S.D.N.Y. 2014), the Court summed up the long line of decisions on this issue as follows: "These cases stand for the proposition that civil courts may resolve secular issues that arise with respect to a religious entity, but only when inquiry into religious law and polity is not required." Specifically with respect to defamation, "[w]here a court or a jury would have to determine the truth of the defendants' statements .. *and, in doing so, would examine and weigh competing views of church doctrine*, the result is entanglement in a matter of ecclesiastical concern." The question is whether plaintiff's claim concerns "discipline, faith, internal organization, or ecclesiastical rule, custom or law, or a purely secular dispute between third parties and a particular defendant, albeit a religiously affiliated organization." *Id*. at 250-251.

    The complaint is narrowly drafted to allege a purely "secular dispute" that requires no consideration of church doctrine or discipline, much less any weighing of competing doctrinal views, and which can be resolved by the application of neutral principles of law. The sole basis for the defamation claim is that defendants knowingly and falsely charged plaintiff with forging

Donald J. Feerick, Jr., Esq.
December 1, 2020

the signature of defendant Hilarion on two letters, dated December 10, 2018 and January 11, 2019, and with fabricating the contents of these letters. Thus, the *only* issues to be resolved by the trier of fact (other than damages) is whether the signatures on the two letters are in fact genuine, and whether defendants, in publicly accusing the plaintiff of having forged the signatures and falsified the contents, knew that the signatures were genuine. Simply put, if Hilarion's signature on the letters is genuine, the defendants will be liable for defamation. Nothing more needs to be considered by the trier of fact.

Your claim that the September 3 letter "contains specific statements surrounding plaintiff's nomination, election and confirmation to Bishop" misses the point. The sole issue is the falsity of the statements *which constitute the predicate of the plaintiff's claim*, not *other* statements which form no part of plaintiff's claim.

2.  The Court Has Personal Jurisdiction Over Six Out-of-State Defendants

Defendant EAD is subject to personal jurisdiction in New York under CPLR 301.[1] EAD operates over thirty Russian Orthodox churches and monasteries in New York (Complaint ¶ 20), and has done so since its founding in 1934. EAD's "ruling bishop" is Hilarion, whose seat ("see") is in New York. EAD's extensive New York-centered activity over many decades is well documented on its own website. As such, EAD has a "continuous and systematic course of doing business" in New York, so that a "finding of its presence in this jurisdiction [for all purposes] is warranted." *Fischer v. Stiglitz*, 2016 WL 3223627 * 3 (S.D.N.Y. 2016).

The five out-of-state individual defendants (as well as EAD) are subject to jurisdiction under CPLR 302(a)(1), which permits jurisdiction if (1) the defendant "transacts any business within the state; and (2) the cause of action arises from that transaction." *Fischer* at * 5. As applied to defamation, "a defendant must engage in the relevant New York-based activity with the *intent* to create the allegedly defamatory work for jurisdiction to lie under CPLR 302(a)(1)." *Id.* at 7. *See also Biro v. Nast*, 2012 WL 3262880 at *10 (S.D.N.Y. 2012) ("[c]ourts have typically found long-arm jurisdiction [in defamation cases] where the defendant engaged in some purposeful activity within New York that was directly related to the creation of the allegedly defamatory work"); *Sovik v. Healing Network*, 24 A.D.2d 985, 655 N.Y.S.2d 997 (4th Dep't 1997) (active involvement and personal control over the writing and distribution of the defamatory statement by out-of-state defendants is a sufficient basis for the acquisition of long-arm jurisdiction).

New York City was the epicenter of the Olkhovsky Group's scheme set forth in the Complaint. The scheme began by pressuring Hilarion to disavow his authorship and his own signature on the two letters and to acquiesce to the schemers' plan to charge the plaintiff with forging them. This pressure campaign, in which all Olkhovsky Group defendants participated in person and by phone, was applied to Hilarion at his offices and residence in New York City between August 30 and September 3. During this three-day period, numerous phone calls were exchanged between Olkhovsky, who spearheaded the scheme, and out-of-state defendants, formulating and coordinating the scheme. During that period, Olkhovsky and Gan drafted what became the September 3 letter. The drafting took place in New York. From there it was

---

[1]   To the extent the Complaint does not specifically reference Section 301, plaintiff is prepared to amend it.

Donald J. Feerick, Jr., Esq.
December 1, 2020

disseminated to other defendants. Out-of-state defendants communicated their approval and their willingness to go along with the scheme to Olkhovsky (and others) in New York. The meeting of the Diocesan Council in which the September 3 letter was discussed, finalized and adopted, took place in New York, with Hilarion, in his capacity as the Council's president, in attendance. The out-of-state defendants participated in the meeting either in person or telephonically. The signatures of the defendants on the September 3 letter were affixed either in New York or forwarded to New York by the defendants. The defamatory letter was directed to the ROCOR Synod, located in New York, with the intent that it be disseminated from there, including in New York.

The above facts amply satisfy the 302(a)(1) requirement of "New York-based activity with the intent to create" the defamatory work. If defendants maintain their objection to jurisdiction, plaintiff is prepared to amend the Complaint to include these facts.

3.  <u>Defendants' 12(b)(6) Arguments</u>

    a)  The third claim for relief for false light is hereby withdrawn.

    b)  Your claim that the defamatory statements were not in fact defamatory is wrong. "A defamatory statement is one that is reasonably susceptible to a defamatory connotation in context." *A & E Products Group L.P. v. The Accessory Corp.*, 2001 WL 1568238 * 6 (S.D.N.Y. 2001). That the statements in the September 3 letter are reasonably susceptible to the connotation that the plaintiff is a forger and fabricator -- and that the defendants intended it to be so read – is beyond cavil. That was the very purpose of the letter, and it was so read by the publications who carried the story, and their readers as well.

    c)  Both Florida and New York courts hold that if an officer or director commits or participates in a tort, whether or not his actions are in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort. *See Thorpe v. Gebwalks,* 953 So.2d 606 (Fla. Dist. Ct. App. 2007)(corporate shield doctrine does not protect corporate officer who commits intentional misconduct); *First Fin. USA, Inc. v. Steinger*, 660 So.2d 996, 997-98 (Fla. Dist. Ct. App. 2000)(president of corporation was not shielded from liability for fraudulent conduct); *Scutieri v. Miller*, 605 So.2d 972, 973 (Fla. Dist. Ct. App. 1992)(corporate officers could be liable for defamation even though claim against corporation had been settled); *JMC Restaurant Holdings, LLC v. Pevida*, 2015 WL 9450597 * 4 (E.D.N.Y. 2015)(officers and directors are personally liable for their individual torts).

    d)  Defendant Gan, as Chancellor of defendant ROCOR Synod, was one of the key participants in the Olkhovsky Group's scheme. He took active part in the drafting of the September 3 letter and its dissemination, and did so knowingly and purposefully.

In accordance with the Court's Individual Rules, given plaintiff's willingness to amend the Complaint as set forth above, we ask that you promptly confirm whether the defendants still intend to proceed with the motion to dismiss and, of so, on what grounds.

As it seems we are going the amendment route in any case, we will be adding claims for infliction of emotional distress under Florida law.

Donald J. Feerick, Jr., Esq.
December 1, 2020

        Very truly yours,

        Oleg Rivkin

cc: Hon. Victor Marrero, U.S.D.J. (via ECF)