```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ALEXANDER BELYA,                     :
                                     :
             Plaintiff,              :
                                     :
    - against -                      :
                                     :
METROPOLITAN HILARION, et al.,       :
                                     :
             Defendants.             :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/19/2021

20 Civ. 6597 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Alexander Belya ("Belya"), brings this action against Hilarion Kapral a/k/a Metropolitan Hilarion ("Hilarion"), Nicholas Olkhovskiy ("Olkhovskiy"), Victor Potapov, Serge Lukianov, David Straut, Alexandre Antchoutine, Mark Mancuso, George Temidis, Serafim Gan, Pavel Loukianoff, Boris Dmitrieff, Eastern American Diocese of the Russian Orthodox Church Outside of Russia ("EAD"), the Synod of Bishops of the Russian Orthodox Church Outside of Russia, and John Does 1 through 100 (collectively, "Defendants"), alleging five causes of action stemming from alleged defamatory statements made by Defendants. (See "Complaint," Dkt No. 1).

Now before the Court is Defendants' premotion letter for dismissal of the Complaint (see "Motion," Dkt. No. 40.), which the Court construes as a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

1

12(b)(6)").[1] For the reasons discussed below, Defendants'
Motion is DENIED.

### I.   BACKGROUND

#### A.   FACTUAL BACKGROUND[2]

Belya is a leader of the Russian Orthodox Christian
Church in the United States elected by the Synod of Bishops
located in New York (the governing body of the Russian
Christian Church Outside of Russia ("ROCOR")), to be the
Church's Bishop of Miami. Defendants are a group of various
leaders of ROCOR who oppose Belya's appointment and have
allegedly engaged in a public disinformation campaign in an
effort to strip Belya of his election.

In 2018, Belya held the position of the Dean of the
Florida District of ROCOR after spending nine years as a
priest in the church. In August 2018, Belya was nominated for
the position of Vicar of Florida, with the title of Bishop of
Miami. Belya received news of his nomination from Hilarion,
the leader of ROCOR, who informed him that while many bishops

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F.
App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming
an exchange of letters as a motion to dismiss).
[2] The factual background below, except as otherwise noted, derives from
the Complaint and the facts pleaded therein, which the Court accepts as
true for the purposes of ruling on a motion to dismiss. See Spool v. World
Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC
Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir.
1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d
Cir. 2002). Except when specifically quoted, no further citation will be
made to the Complaint or the documents referred to therein.

supported his nomination, some were still undecided and were withholding support pending further discussion.

Nonetheless, from December 6 through 10, 2018, the ROCOR Synod met in New York and officially elected Belya to the position of Bishop of Miami via a majority vote. By letter dated December 10, 2018 (the "December 10 Letter"), Hilarion communicated the news of Belya's election to the Church's leaders in Russia, specifically Patriarch Kirill, head of the Holy Synod of the Russian Orthodox Church in Moscow, who would be confirming the election per the Church's rules and procedures. Hilarion noted that as a condition of Belya's election, Belya would be required to resolve a few outstanding issues concerning his religious practices to ensure compliance with Church policies. Hilarion informed the Russian leadership that he would write again seeking official confirmation once these issues were resolved.

Hilarion also communicated the news of Belya's election to Belya himself. This letter also informed Belya of the various outstanding issues and changes of practice Belya was to implement at his congregations before his election would be confirmed. Hilarion appointed Archbishop Gavriil of Montreal to observe and report on Belya's progress in implementing the changes in question.

3

In early January 2019, Gavriil confirmed to Hilarion that Belya had instituted the required changes of practices and that he foresaw no issues in moving forward with Belya's confirmation. Upon receiving Gavriil's report, Hilarion wrote to Patriarch Kirill in Moscow asking that the Moscow Synod officially confirm Belya's election. Hilarion's letter was signed and stamped with his official seal.

In July 2019, Patriarch Kirill contacted Belya directly and invited him to meet in person. At this meeting, Patriarch Kirill questioned Belya about the various outstanding issues identified by Hilarion in his December 10 Letter, and, after expressing satisfaction with Belya's responses, informed Belya that the Moscow Synod would be approving his appointment to Bishop of Miami. On August 30, 2019, the Moscow Synod did indeed confirm the appointment, news of which was published on the Synod's official website. Hilarion allegedly called Belya to congratulate him that day.

Belya asserts that throughout this nomination and election process, a group of detractors within ROCOR (the "Olkhovskiy Group") vehemently opposed Belya's nomination. This group, led by defendant Olkhovskiy, the Bishop of Manhattan and Vicar (or head) Bishop of the EAD, had substantial influence within ROCOR but was not numerous enough to block Belya's nomination. Belya further alleges

that after the opponents' bid to oppose his nomination and election failed, they resorted to "falsehood, intimidation, and fraud" in an attempt to strip him of his new title. (Complaint ¶ 39.)

Of central importance to the present dispute, on September 3, 2019, the Olkhovskiy Group wrote a letter (the "September 3 Letter") to the ROCOR Synod and Hilarion leveling a number of charges against Belya regarding his nomination and election as Bishop of Miami. Principally, the letter alleges that the election of Belya never actually occurred; that the results of Belya's election were fabricated; that the communications from Hilarion to Russia were falsified, either with Hilarion's knowledge or without; and that the letter from Archbishop Gavriil confirming that Belya had instituted the required changes of practice was likewise falsified. The Olkhovskiy Group requested, in light these allegations and additional unspecified complaints from persons in Florida, that Belya be suspended from clerical functions until the completion of a full investigation. This letter was disseminated among the members of the New York Synod, to parishes, churches, monasteries, and other institutions within ROCOR, as well as more broadly to online media outlets.

According to Belya, after the September 3 Letter was sent, he was denied all access to Hilarion and was suspended from performing his duties as spiritual leader of his parish. The accusations against Belya spread among the ROCOR community and were eventually published on the ROCOR social media accounts and online publications such as Orthodox News and Helleniscope. On September 14, 2019, Hilarion issued a public decree officially suspending Belya pending an investigation.

Following this sequence of events, on August 18, 2020, Belya filed the instant Complaint, bringing claims of defamation, defamation per se, false light,[3] defamation by implication/innuendo, and vicarious liability.

Pursuant to the Court's Individual Rules, Defendants notified Belya by letter dated November 24, 2020 of their intention to move to dismiss the Complaint based on alleged deficiencies contained therein. (See Dkt. No. 38). Belya responded by letter dated December 1, 2020. (See Dkt. No. 39.) Defendants subsequently moved the Court for leave to file a motion to dismiss. (See Motion.)

The Court declined to allow full briefing but allowed both parties to submit further letters detailing their

---

[3] Belya has since withdrawn his claim for false light, and accordingly, the Court does not consider this claim.

6

positions. (See Dkt. No. 41.) Belya filed an opposition to the motion, attaching a proposed Amended Complaint, on January 14, 2021. (See "Response," Dkt. No. 42.) Defendants replied on January 22, 2021. (See "Reply," Dkt. No. 43.) And finally, Belya filed a sur-reply as directed by the Court on February 2, 2021. (See "Sur-reply," Dkt. No. 45.) The Court considered each of these submissions in connection with this Decision and Order.

B.    THE PARTIES' ARGUMENTS

Defendants argue that the Complaint should be dismissed because (1) the statements at issue are not defamatory statements, but rather are mere allegations or statements of opinion; (2) the statements, even if defamatory, are protected from liability pursuant to the qualified common-interest privilege; (3) the Court lacks subject-matter jurisdiction because the case concerns nonjusticiable ecclesiastical issues under the First Amendment; and (4) personal jurisdiction over the out-of-state defendants does not exist under New York's long-arm statute.

Plaintiff responds that (1) the statements at issue are ones of fact reasonably susceptible to defamatory connotation in context, and therefore adequately pled; (2) the defense of qualified privilege is not available to Defendants because they acted with actual malice or beyond the scope of the

privilege; (3) ecclesiastical abstention has no application to this case because it can be resolved by neutral principles of law; and (4) all Defendants are subject to personal jurisdiction because they engaged in New York-based activity with the intent to create the defamatory work.

## II.    **LEGAL STANDARD**

### A.    RULE 12(B)(1) MOTION TO DISMISS

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). While the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id. (citation omitted).

### B.    RULE 12(B)(6) MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). This standard is met "when the
plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." Id. A complaint should be
dismissed if the plaintiff has not offered factual
allegations sufficient to render the claims facially
plausible. See id. However, a court should not dismiss a
complaint for failure to state a claim if the factual
allegations sufficiently "raise a right to relief about the
speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is
"to assess the legal feasibility of the complaint, not to
assay the weight of the evidence which might be offered in
support thereof." In re Initial Pub. Offering Sec. Litig.,
383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation
marks omitted), aff'd sub nom. Tenney v. Credit Suisse First
Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May
19, 2006). In this context, the Court must draw reasonable
inferences in favor of the nonmoving party. See Chambers v.
TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However,
the requirement that a court accept the factual allegations
in the complaint as true does not extend to legal conclusions.
See Iqbal, 556 U.S. at 678.

## III.   DISCUSSION

After reviewing the parties' submissions, the Court denies the Motion. The Court is persuaded that subject-matter jurisdiction does exist, the defamation claims are adequately pled, and personal jurisdiction exists over the out-of-state Defendants.

A.    SUBJECT-MATTER JURISDICTION

Defendants argue that the doctrine of ecclesiastical abstention prevents the Court from exercising jurisdiction over this dispute. The First Amendment's Establishment Clause forbids civil courts from interfering in or determining religious disputes. Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am., 344 U.S. 94, 116 (1952); see also Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 195 (2012). But ecclesiastical abstention does not bar claims if they may be resolved by appealing to neutral principles of law. Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 449, 451 (1969); Hyung Jin Moon v. Hak Ha Han Moon, 431 F. Supp. 3d 394, 407-08 (S.D.N.Y. 2019). Thus, if "inquiry into religious law and polity is not required" to resolve issues "that arise with respect to a religious entity," the Court may properly exercise jurisdiction. Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 249-50 (S.D.N.Y. 2014).

Here, the Court is persuaded Belya brings a suit that may be resolved by appealing to neutral principles of law. Plaintiff's claim centers on Defendants' allegations that he forged the various letters at issue that led to the confirmation of his election as Bishop of Miami. (See, e.g., Complaint ¶ 60.) Belya does not ask this Court to determine whether his election was proper or whether he should be reinstated to his role as Bishop of Miami, and the Court would not consider such a request under the doctrine of ecclesiastical abstention. See Laguerre v. Maurice, No. 2018-11567, 2020 WL 7636435, at *2 (N.Y. App. Div. Dec. 23, 2020). Instead, the issues that the Complaint requires the Court address include whether, under New York law, Defendants made the alleged statements, the truth of the alleged statements, Defendants' knowledge of the alleged statements' falsity at the time they were made, whether the alleged statements are subject to defamation laws, if any harm was caused by the alleged defamation, and whether any privilege applies. These elements raise secular inquiries that the ultimate finder of fact may make without weighing matters of ecclesiastical concern. See Sieger v. Union of Orthodox Rabbis of U.S & Canada, 767 N.Y.S.2d 78 (N.Y. App. Div. 2003) ("To the extent plaintiff has alleged defamatory statements which can be evaluated solely by the application of neutral principles of

law and do not implicate matters of religious doctrine and
practice, such as whether plaintiff is sane or is a fit
mother, they are not barred by the Establishment Clause.").
Accordingly, because the allegedly defamatory statements can
be reviewed by appealing to and applying neutral principles
of law, the Court is persuaded that subject matter
jurisdiction exists here.

B.   DEFAMATION

Having found that subject-matter jurisdiction exists,
the Court now turns to Defendants' arguments that the
statements were not in fact defamatory or, if they were, that
they were made subject to a privilege. Under New York law, a
defamatory statement is one that exposes an individual "to
public hatred, shame, obloquy, contumely, odium, contempt,
ridicule, aversion, ostracism, degradation, or disgrace, or
... induce[s] an evil opinion of one in the minds of right-
thinking persons, and . . . deprives one of . . . confidence
and friendly intercourse in society." Kimmerle v. N.Y.
Evening Journal, 186 N.E. 217, 218 (N.Y. 1933); see also Golub
v. Enquirer/Star Grp., Inc., 681 N.E.2d 1282, 1283 (N.Y.
1997). "Whether particular words are defamatory presents a
legal question to be resolved by the court[s] in the first
instance." Aronson v. Wiersma, 483 N.E.2d 1138, 1139 (N.Y.
1985).

In assessing the alleged defamatory statements, the
Court "must give the disputed language a fair reading in the
context of the publication as a whole." Armstrong v. Simon &
Schuster, Inc., 649 N.E.2d 825, 829 (N.Y. 1995). Courts should
not "strain to interpret such writings in their mildest and
most inoffensive sense to hold them nonlibelous." November v.
Time Inc., 194 N.E.2d 126, 128 (N.Y. 1963). And "the words
are to be construed not with the close precision expected
from lawyers and judges but as they would be read and
understood by the public to which they are addressed." Id.
Finally, neither opinions nor mere allegations are actionable
under New York defamation law. See Flamm v. Am. Ass'n of Univ.
Women, 201 F.3d 144, 147–48 (2d Cir. 2000); Brian v.
Richardson, 87 N.Y.2d 46, 53-54, 660 N.E.2d 1126 (N.Y. 1995).

Defendants principally argue that the statements
identified in the Complaint cannot be defamatory because they
are allegations or opinions. (See Motion at 2.) But the Court
is persuaded that the September 3 Letter makes at least one
statement that may adequately form the basis of a defamation
claim. Specifically, according to the Complaint,[4] the
September 3 Letter stated: "It turns out that Metropolitan
Hilarion of Eastern America & New York knew nothing about the

---

[4] The September 3 Letter is not attached to the Complaint, so the Court
accepts the Complaint's allegations as to its contents as true at this
stage.

written appeals directed to Moscow containing a request for confirmation of the 'episcopal election' of the Archimandrite by the Synod of Bishops (which never took place)." (Complaint ¶ 42.) Whether the election did indeed take place, and whether Hilarion knew of its results and transmitted letters to Moscow, are all factual matters. And the September 3 Letter states its conclusions on those points as matters of fact -- not allegations of potential wrongdoing or opinions on the matter. Therefore, the Court is persuaded that statements (a)-(f) in paragraph 60 of the Complaint are plausibly actionable statements. In coming to this conclusion, the Court considers the fundamental principle governing evaluation of Rule 12(b)(6) motions to dismiss that any ambiguities or doubts and reasonable inferences must be resolved in the plaintiff's favor.

Having found that at least one of the alleged defamatory statements is adequately pled at this stage, the Complaint survives a Rule 12(b)(6) motion as to the sufficiency of the allegations, and the Court need not address each additional statement in dispute.

Next, Defendants argue that even if statements in the September 3 Letter are found to be defamatory, they were made in the discharge of Defendants' private duty and in furtherance of the common interest of ROCOR and therefore

14

subject to qualified privilege. (See Motion at 2.) "A statement is generally subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral." Chandok v. Klessig, 632 F.3d 803, 814 (2d Cir. 2011).

Belya counters that any privilege is overcome here because Defendants acted with actual malice or beyond the scope of the privilege. "A qualified privilege may be overcome by a showing . . . actual malice (i.e., knowledge of the statement's falsity or reckless disregard as to whether it was false)." Id. at 815. In New York, actual malice must be proved by a preponderance of the evidence. Id. at 816. At this early stage, the Court is persuaded that the allegations in the Complaint are sufficient to establish that Defendants plausibly acted with actual malice. As discussed above, the September 3 Letter makes at least one factual statement that may have been false and made by Defendants with the full knowledge of its falsity. (See Complaint ¶ 42.) The Court is therefore persuaded that it is at least plausible that the qualified privilege may be overcome. In reaching this conclusion, the Court again takes into account the principle that at this stage it must resolve doubts and ambiguities and draw reasonable inferences in the plaintiff's favor.

As a result, the Court need not address Belya's additional argument that Defendants acted outside the scope of the privilege. Because at least one alleged statement is actionable as a matter of law, and it is plausible that the qualified privilege may be overcome, Belya's defamation claim has been adequately pled.

C.   PERSONAL JURISDICTION OVER OUT-OF-STATE DEFENDANTS

Defendants argue that the Court lacks personal jurisdiction over the out-of-state Defendants, specifically EAD and five individual defendants. (See Motion at 3.) The Court is not persuaded.

First, the Court finds that it has jurisdiction over EAD under New York Civil Practice Laws and Rules § 301 because EAD operates in New York for all purposes. A party is subject to a New York court's general jurisdiction under Section 301 when its contacts occur "not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 565 N.E.2d 488, 490 (N.Y. 1990). EAD fits this bill. EAD's principal place of operation is New York. (Dkt. No. 42-1, ¶ 19.) EAD operates over thirty churches and monasteries in New York and has done so since its founding in 1934. (Id.) EAD's "ruling bishop" is Hilarion who is based in New York. (Id.) Given these types of "continuous and systematic" contacts with New

York, the Court is persuaded that EAD is present in New York "for all purposes." See <u>Fischer v. Stiglitz</u>, No. 15 Civ. 6266, 2016 WL 3223627, at *3 (S.D.N.Y. June 8, 2016).

However, even if EAD were not present in New York for all purposes, the Court would still have jurisdiction over both EAD and the five out-of-state individual defendants pursuant to New York Civil Practice Laws and Rules § 302(a)(1). Under Section 302(a)(1), a New York court has jurisdiction over a defendant if the defendant (1) "transacts any business within the state," and (2) the cause of action arises from that transaction. Specific to defamation, "a defendant must engage in the relevant New York-based activity with the intent to create the allegedly defamatory work." <u>Fischer</u>, 2016 WL 3223627, at *7; <u>Biro v. Conde Nast</u>, No. 11 Civ. 4442, 2012 WL 3262770, at *10 (S.D.N.Y. Aug. 10, 2012). The out-of-state defendants' conduct, as alleged in the Complaint, satisfies this standard.

Belya alleges that the September 3 Letter was formulated and drafted by Olkhovskiy in New York. (Dkt. No. 42-1, ¶¶ 61-62.)This process included applying pressure to Hilarion at his offices in New York, coming up with the scheme, drafting the letter, and ultimately sending the letter to Hilarion at his New York address. (<u>Id.</u> ¶ 60.) The out-of-state defendants are alleged to have participated in numerous phone calls in

effectuating the scheme that resulted in the defamatory work, including giving final approval via sending their signatures to New York. (Id. ¶ 63-63.) This type of participation in creating the defamatory work gives rise to personal jurisdiction over the out-of-state Defendants. See Sovik v. Healing Network, 665 N.Y.S.2d 997 (N.Y. App. Div. 1997); see also Biro, 2012 WL 3262770, at *10.

## IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Hilarion Kapral a/k/a Metropolitan Hilarion, Nicholas Olkhovskiy, Victor Potapov, Serge Lukianov, David Straut, Alexandre Antchoutine, Mark Mancuso, George Temidis, Serafim Gan, Pavel Loukianoff, Boris Dmitrieff, Eastern American Diocese of the Russian Orthodox Church Outside of Russia, the Synod of Bishops of the Russian Orthodox Church Outside of Russia, and John Does 1 through 100 pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (see Dkt. No. 40) is **DENIED**, and it is further

**ORDERED** that plaintiff Alexander Belya file the amended complaint (Dkt. No. 42-1) within twenty (21) days of the date of this Order. Defendants are directed to answer or otherwise respond to the amended complaint within twenty (21) days of its filing.

**SO ORDERED.**

Dated: New York, New York
       19 May 2021

                                        Victor Marrero
                                        U.S.D.J.