21-1498
*Belya v. Kapral, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

August Term 2021

(Argued:  March 7, 2022     Decided:  August 17, 2022
Amended:  September 16, 2022)

Docket No. 21-1498

---

ALEXANDER BELYA,

*Plaintiff-Appellee,*

*v.*

HILARION KAPRAL, AKA METROPOLITAN HILARION, NICHOLAS OLKHOVSKIY,
VICTOR POTAPOV, SERGE LUKIANOV, DAVID STRAUT, ALEXANDRE ANTCHOUTINE,
GEORGE TEMIDIS, SERAFIM GAN, BORIS DMITRIEFF, EASTERN AMERICAN DIOCESE OF
THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, THE SYNOD OF BISHOPS OF
THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, MARK MANCUSO,

*Defendants-Appellants.*\*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Before:      CHIN, LOHIER, AND ROBINSON, *Circuit Judges.*

---

\*  The Clerk of Court is directed to amend the caption as set forth above.

---

Appeal from orders of the United States District Court for the Southern District of New York (Marrero, *J.*) denying motions of defendants-appellants church officials and organizations to dismiss plaintiff-appellee's defamation claims, for reconsideration of that ruling, and to bifurcate discovery or otherwise stay proceedings. Defendants-appellants argue that the church autonomy doctrine bars the defamation claims and seek to appeal the interlocutory orders on the basis of the collateral order doctrine. We conclude that we lack appellate jurisdiction over the orders.

DISMISSED. STAY VACATED.

---

DIANA VERM THOMSON (Daniel H. Blomberg, Lori H. Windham, Daniel D. Benson, *on the brief*), The Becket Fund for Religious Liberty, Washington, DC, *and* Donald J. Feerick, Jr., Feerick Nugent MacCartney, PLLC, South Nyack, NY, *for Defendants-Appellants.*

BRADLEY GIRARD (Richard B. Katskee, *on the brief*), Americans United for Separation of Church and State, Washington, DC, *and* Oleg Rivkin, Rivkin Law Group PLLC, New York, NY, *for Plaintiff-Appellee.*

Thomas G. Hungar, Andrew G.I. Kilberg, John Matthew Butler, Jason Manion, Macey L. Olave, Gibson, Dunn & Crutcher LLP, Washington, DC, *and* San

Francisco, CA, *for Amici Curiae Professor Michael W. McConnell and Professor Douglas Laycock*.

Gordon D. Todd, Daniel J. Hay, John L. Gibbons, Sidley Austin LLP, Washington, DC, *for Amici Curiae The Roman Catholic Archdiocese of New York, Assemblies of God (USA), Jurisdiction of the Armed Forces and Chaplaincy of the Anglican Church in North America, General Conference of Seventh-Day Adventists, The Lutheran Church-Missouri Synod, and The International Society for Krishna Consciousness, in support of Defendants-Appellants*.

Ryan Paulsen, Ryan N. Gardner, Haynes and Boone, LLP, Dallas, TX, *for Amicus Curiae Jewish Coalition for Religious Liberty, in support of Defendants-Appellants*.

Matthew T. Nelson, Warner Norcross + Judd LLP, Grand Rapids, MI, *for Amici Curiae Constitutional Law Scholars, in support of Defendants-Appellants*.

James A. Campbell, Solicitor General of Nebraska; Douglas J. Peterson, Attorney General of Nebraska; David T. Bydalek, Chief Deputy Attorney General of Nebraska; Steve Marshall, Attorney General of Alabama; Mark Brnovich, Attorney General of Arizona; Leslie Rutledge, Attorney General of Arkansas; Chris Carr, Attorney General of Georgia; Derek Schmidt, Attorney General of Kansas; Daniel Cameron, Attorney General of Kentucky; Jeff Landry, Attorney General of Louisiana; Lynn Fitch, Attorney General of Mississippi; Eric S. Schmitt, Attorney General of Missouri; Austin Knudsen, Attorney General of Montana; John M. O'Connor,

Attorney General of Oklahoma; Alan Wilson,
Attorney General of South Carolina; *and* Sean D.
Reyes, Attorney General of Utah, *for Amici Curiae
States of Nebraska, Alabama, Arizona, Arkansas,
Georgia, Kansas, Kentucky, Louisiana, Mississippi,
Missouri, Montana, Oklahoma, South Carolina, and
Utah, in support of Defendants-Appellants*.

---

CHIN, *Circuit Judge*:

In this case, plaintiff-appellee Alexander Belya sued defendants-appellants -- individuals and entities affiliated with the Russian Orthodox Church Outside Russia ("ROCOR" and, collectively, "Defendants") -- for defamation, contending that they defamed him when they publicly accused him of forging a series of letters relating to his appointment as the Bishop of Miami.

Defendants moved to dismiss based on the "church autonomy doctrine," arguing that Belya's suit would impermissibly involve the courts in matters of faith, doctrine, and internal church government. The district court denied the motion. Defendants then filed a motion for reconsideration and a motion to limit discovery to the issue of whether the church autonomy doctrine applied or otherwise to stay proceedings. The district court denied those motions as well. Defendants appeal from the three interlocutory rulings.

Appellate jurisdiction typically requires either a final judgment, 28 U.S.C. § 1291, or a certified interlocutory appeal, 28 U.S.C. § 1292(b). The district court denied Defendants' motions without entering a final judgment (the case is pending in the district court, although proceedings have been stayed) and declined to certify an interlocutory appeal. Defendants argue that we have appellate jurisdiction based on the collateral order doctrine, which allows for appellate review of an interlocutory order if the ruling (1) is conclusive; (2) resolves important questions separate from the merits; and (3) is effectively unreviewable on appeal after a final judgment is entered.

We hold that the collateral order doctrine does not apply in the circumstances here. We therefore dismiss this appeal.

## BACKGROUND

### A. *The Facts*

This case hinges on public accusations that Belya forged certain documents relating to his role within ROCOR. The facts as alleged in Belya's amended complaint (the "Complaint") are assumed to be true for purposes of this appeal.

1.      *Belya's Apparent Election as Bishop*

Belya served as a ROCOR priest in the Czech Republic and Slovakia before moving to the United States eleven years ago. He served in the United States as a ROCOR priest until September 14, 2019, when he was suspended pending an investigation into the matters discussed below.

As set forth in the Complaint, Belya was elected by the Synod of Bishops of ROCOR (the "Synod") -- the executive arm of ROCOR -- to the position of Bishop of Miami. The election was held from December 6 through 10, 2018.

Defendant-appellant Hilarion Kapral, also known as Metropolitan Hilarion, was the "ruling bishop and First Hierarch" of ROCOR. Defs.-Appellants' Br. at 5.[1] Metropolitan Hilarion apparently wrote a letter dated December 10, 2018 (the "December 10 letter") to Patriarch Kirill, the Patriarch of Moscow and All Russia, which stated:

> I am happy to share the joyful news – by a majority vote
> two Vicar Bishops have been elected to the diocese
> entrusted to me. They are most worthy candidates.

---

[1]      "Metropolitan" is a title within ROCOR. According to ROCOR, Metropolitan Hilarion passed away on May 16, 2022. *See* Press Release, The Russian Orthodox Church Outside of Russia, His Eminence Metropolitan Hilarion of Eastern America and New York, First Hierarch of the Russian Church Abroad, Reposes in the Lord (May 16, 2022), https://www.synod.com/synod/eng2022/ 20220516_print_enmhrepose.html.

> . . . .
> [Candidates include] Archimandrite Alexander
> (Belya) . . . elected as the Bishop of Miami.

Joint App'x at 92.  According to the Complaint, the December 10 letter was

signed by Metropolitan Hilarion and stamped with his official seal.

That same day, Metropolitan Hilarion also sent a letter to Belya,

explaining that there were certain corrections that Belya needed to make to his

practices.  The Synod designated Archbishop Gavriil to report on Belya's

implementation of these corrections.  In early January 2019 (the "early January

letter"), Archbishop Gavriil wrote to Metropolitan Hilarion, stating that:

> I do not see any obstacles to approv[ing] the date of
> consecration of [Belya], elected as the Vicar Bishop for
> Miami, of which I hereby inform Your Eminence.

*Id*. at 93.  Soon thereafter, on January 11, 2019 (the "January 11 letter"),

Metropolitan Hilarion wrote again to Patriarch Kirill, stating as follows:

> I hereby ask Your Holiness to approve [Belya's]
> candidacy at the next meeting of the Holy Synod of the
> Russian Orthodox Church.

*Id*. at 94.  Like the December 10 letter, the January 11 letter apparently was signed

by Metropolitan Hilarion and stamped with his official seal.

On July 16, 2019, Belya had an audience with Patriarch Kirill.  Six

weeks later, on August 30, 2019, the Moscow Patriarchate's official website

posted the decision to approve Belya's appointment. On that same day,

Metropolitan Hilarion congratulated Belya via phone call.

## 2. *The Allegations of Forgery and Fraud*

Four days later, on September 3, 2019, several ROCOR clergy

members[2] wrote a letter about Belya to the Synod and Metropolitan Hilarion (the

"September 3 letter"). The September 3 letter was disseminated to all thirteen

members of the Synod and forwarded to other members of ROCOR, including

parishes, churches, monasteries, and other institutions, as well as online media

outlets. It raised concerns about purportedly irregular aspects of Belya's

"confirmation by [ROCOR] . . . as Bishop of Miami." *Id.* at 95. The alleged

irregularities related to the December 10, early January, and January 11 letters.

First, the September 3 letter asserted that even though the December

10 and January 11 letters appeared to have been signed and stamped with his

seal, Metropolitan Hilarion "knew nothing about the written [letters] directed to

Moscow." *Id.* (emphasis omitted). The September 3 letter further alleged that "as

stated by His Eminence [Metropolitan Hilarion]," the letters "were drawn up in

---

[2] All signees of the letter are defendants-appellants in this case. The signees were Nicholas Olkhovskiy, Victor Potapov, Serge Lukianov, David Straut, Alexandre Antchoutine, George Temidis, and Mark Mancuso. Defendant-appellant Boris Dmitrieff also participated in drafting the letter.

an irregular manner." *Id.* (emphasis omitted). It mentioned the absence of an "appropriate citation" from the Synod's decision and the lack of a biography of those elected. *Id*. at 95-96. Second, the September 3 letter stated that the early January letter "raises doubts as well," specifically because the early January letter was not printed on Archbishop Gavriil's "official letterhead." *Id.* at 96 (emphasis omitted).

The September 3 letter requested that, considering the allegations, Belya be suspended from clerical functions and barred from election candidacy. That same day, Metropolitan Hilarion issued an order to Belya suspending him from his position and responsibilities. Soon after, on September 16, 2019, Metropolitan Hilarion issued a public decree suspending Belya pending a formal investigation recommended in the September 3 letter. The decree also prohibited members of Belya's parish from communicating with him.

On September 16, 2019, a clergy member[3] posted about the dispute over Belya's confirmation on the social media site of his church. The post read:

> Alleged ROCOR episcopal nominee Fr. Alexander
> Belya, already confirmed by the ROC Synod, had not
> been elected by the ROCOR Synod and a letter
> informing about [sic] his nomination sent to Moscow

---

[3] The clergy member, Serafim Gan, is also a defendant-appellant in this case.

> was a forgery.  The priest in question was suspended,
> internal investigation was started.

*Id.* at 98.  Various religious news outlets and publications also publicly circulated

news of the controversy.  *Orthodox News*, for example, reposted the statement.

*Helleniscope*, another Orthodox Christian publication, wrote:

> This past summer, [Belya] also forged a letter from His
> Eminence Metropolitan Hilarion (Kapral), the First
> Hierarch of ROCOR, attempting to get himself
> confirmed by the Holy Synod of the Moscow
> Patriarchate as a bishop-elect for ROCOR in America.

*Id.*

Following the controversy, Belya left ROCOR and now serves as a

priest of the Greek Orthodox Church.

**B.**     *The Proceedings Below*

On August 18, 2020, Belya commenced this lawsuit against

Defendants, alleging claims for defamation, defamation per se, and defamation

by innuendo.  On December 8, 2020, Defendants filed a letter brief seeking

permission to file a motion to dismiss for lack of jurisdiction, as well as for failure

to state a claim, and requesting a conference.  The district court denied

Defendants' request for a conference but construed Defendants' letter brief as a

motion to dismiss.  It directed Belya to respond with a letter brief and proposed amended complaint.  Belya did so on January 14, 2021.

On May 19, 2021, the district court denied Defendants' motion to dismiss and ordered Belya to file the amended complaint.  The district court found jurisdiction because it concluded that the church autonomy principles cited by Defendants did not bar application of neutral principles of law, and Belya's case could be resolved by such neutral principles.

On May 20, 2021, Belya filed the Amended Complaint.  On June 16, 2021, Defendants filed a Rule 59(e) motion for reconsideration.  On June 25, 2021, Defendants moved for certification under 28 U.S.C. § 1292(b) for interlocutory appeal of the district court's order denying their motion to dismiss.  The district court denied both motions on July 6, 2021.  First, the district court denied the motion for reconsideration as untimely under Local Rule 6.3.  Second, it denied the motion for interlocutory certification because Defendants' arguments amounted to "disputes as to whether the factual situation presented fits into the [church autonomy doctrine]" rather than a question suitable for interlocutory appeal. *Belya v. Kapral*, No. 20-CV-6597, 2021 WL 2809604, at *2 (S.D.N.Y. July 6, 2021).

On July 21, 2021, Defendants filed a motion to limit initial discovery to whether the church autonomy doctrine applied in this case or, in the alternative, to stay proceedings. The district court denied that motion on July 27, 2021.

This appeal followed. Defendants appeal three of the district court's orders: the May 19, 2021, denial of their motion to dismiss; the July 6, 2021, denial of their motion for reconsideration; and the July 27, 2021, denial of their motion to limit discovery or stay proceedings. Also pending is a July 15, 2021, motion by Belya in this Court to dismiss this appeal. On September 2, 2021, we granted a temporary stay of the district court proceedings. The parties have briefed both the motion to dismiss and the merits.

## DISCUSSION

The threshold issue is whether we have appellate jurisdiction, pursuant to the collateral order doctrine, over the district court's three interlocutory orders denying Defendants' motions to dismiss, for reconsideration, and to bifurcate discovery or otherwise stay proceedings. We hold that we do not. Accordingly, we dismiss the appeal and do not reach the merits.

**A.     *Applicable Law***

Two doctrines are at issue in this case:  the collateral order doctrine and the church autonomy doctrine.[4]

**1.     *The Collateral Order Doctrine***

Appellate jurisdiction typically arises either from a district court's final judgment, 28 U.S.C. § 1291, or the district court's certification of an issue for interlocutory appeal, 28 U.S.C. § 1292(b).  A "narrow and selective" class of orders, however, are appealable because they meet the requirements of the collateral order doctrine.  *Will v. Hallock*, 546 U.S. 345, 350 (2006).  The collateral order doctrine is a "practical rather than a technical construction" of § 1291.  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  It provides for:

> [A]ppellate jurisdiction over a small class of "collateral"
> rulings that do not terminate the litigation in the court
> below but are nonetheless sufficiently "final" and
> distinct from the merits to be appealable without
> waiting for a final judgment to be entered.

---

[4]     We use the term "church autonomy doctrine" to refer generally to the First Amendment's prohibition of civil court interference in religious disputes.  Defendants also use the term "church autonomy doctrine," while Belya uses the term "ecclesiastical abstention" to refer to the same concept.  Both parties also refer to the "ministerial exception."  The ministerial exception, however, is one component of church autonomy. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) ("[A] component of this [church] autonomy is the selection of individuals who play certain key roles.  The 'ministerial exception' was based on this insight.").

*Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 146 (2d Cir. 2013) (quoting *Cohen*, 337 U.S. at 546).

The collateral order doctrine is limited to rulings that (1) are "conclusive"; (2) "resolve important questions separate from the merits"; and (3) "are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). These conditions are "stringent," as the narrow collateral appeal exception "should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal" after "final judgment has been entered." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citation omitted). In fact, the Supreme Court has admonished that "the class of collaterally appealable orders must remain 'narrow and selective in its membership.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (quoting *Will*, 546 U.S. at 350).[5] In recent

---

[5] The Supreme Court has rarely extended the collateral order doctrine to cover new categories; the categories of orders falling under the collateral order doctrine require only two hands to count. Such orders imposed an attachment of a vessel in admiralty, *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684 (1950); imposed notice costs in a class action, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); would have led to retrial, thus implicating double jeopardy, *Abney v. United States*, 431 U.S. 651 (1977); would have allowed a case implicating the Speech and Debate Clause to continue, *Helstoski v. Meanor*, 442 U.S. 500 (1979); found no absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731 (1982); found no qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511 (1985); denied a state's claim to Eleventh Amendment immunity,

years, that call for caution has acquired special force because rulemaking,[6] rather

than court decision, has become "the preferred means for determining whether

and when prejudgment orders should be immediately appealable." *Id*.[7] That

preference is in part due to how blunt of an instrument the collateral order

doctrine is; whether an order is appealable is "determined for the entire category

to which a claim belongs." *Digit. Equip. Corp.*, 511 U.S. at 868.

     As to the first prong, a "conclusive determination" means that the

appealed order must be a "complete, formal, and, in the trial court, final rejection

of" the issue. *Abney v. United States*, 431 U.S. 651, 659 (1977). As to the second

prong, an order resolves important questions independent from the merits when

---

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993); and denied a
right to avoid forced medication, *Sell v. United States*, 539 U.S. 166 (2003). In almost two
decades, the Supreme Court has expanded the collateral order doctrine in only one
instance, to address state sovereignty and the All Writs Act in *Shoop v. Twyford*, 596 U.S.
___, 142 S. Ct. 2037 (2022).

[6]    Congress has authorized the Supreme Court to promulgate rules "defin[ing]
when a ruling of a district court is final for the purposes of appeal under
[28 U.S.C. § 1291]." 28 U.S.C. § 2072(c). Congress further specified that § 2072 allows
the Supreme Court to prescribe rules "to provide for an appeal of an interlocutory
decision to the courts of appeals that is not otherwise provided for" by statute.
28 U.S.C. § 1292(e). The Supreme Court has not promulgated any rules that would
grant us appellate jurisdiction over the district court's orders in this case.

[7]    There has even been discussion of ending expansion of the collateral order
doctrine altogether. *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 115 (Thomas, *J.*, concurring in
part) ("[A]ny avenue for immediate appeal beyond [§ 1292(b), mandamus, and appeals
from contempt orders] must be left to the rulemaking process." (internal quotation
marks omitted)).

the questions involve a "claim[] of right separable from . . . rights asserted in the action." *Cohen*, 337 U.S. at 546.  As to the third prong, an order is "effectively unreviewable" where "the order at issue involves an asserted right[,] the legal and practical value of which would be destroyed if it were not vindicated before trial." *Lauro Lines, s.r.l. v. Chasser*, 490 U.S. 495, 498-99 (1989) (internal quotation marks omitted).  In contrast, the fact that a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment" is not sufficient.  *Mohawk Indus.*, 558 U.S. at 107 (internal quotation marks omitted).

Here, Defendants essentially argue that the appealable category is cases where "church autonomy defenses [are] at issue."  Defs.-Appellants' Br. at 20.

## 2. *The Church Autonomy Doctrine*

The church autonomy doctrine provides that religious associations have "independence in matters of faith and doctrine and in closely linked matters of internal government." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2061.  To allow anyone "aggrieved by [a religious association's] decisions" to "appeal to the secular courts and have [those decisions] reversed" subverts the rights of

16

religious associations to retain independence in matters of faith, doctrine, and internal government. *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 114-15 (1952).

But secular components of a dispute involving religious parties are not insulated from judicial review; a court may use the "neutral principles of law" approach. So long as the court relies "exclusively on objective, well-established [legal] concepts," it may permissibly resolve a dispute even when parties are religious bodies. *Jones v. Wolf*, 443 U.S. 595, 602-03 (1979) (establishing the neutral principles of law approach in a dispute over church property).[8] This is a common-sense approach: When a case can be resolved by applying well-established law to secular components of a dispute, such resolution by a secular court presents no infringement upon a religious association's independence. Thus, simply having a religious association on one side of the "v" does not automatically mean a district court must dismiss the case or limit discovery.

Neither this Court nor the Supreme Court has found or even suggested that district court orders like the ones Defendants appeal from fall

---

[8]     Most cases applying the "neutral principles of law" approach have resolved disputes over church property. The approach, however, goes beyond solely church property disputes. *See Moon v. Moon*, 833 F. App'x 876, 879 (2d Cir. 2020) (summary order) (applying the neutral principles of law approach when an individual sought to be recognized as the leader of a church organization).

within the collateral order doctrine. Nor can Defendants find support for this principle in the decisions of our sister circuits.

**B.** *Analysis*

Here, Defendants appeal from the district court's denials of motions to dismiss, for reconsideration, and to bifurcate discovery or otherwise stay proceedings. We consider the three collateral order doctrine requirements in turn; that is, whether the categories of orders (1) are "conclusive"; (2) "resolve important questions separate from the merits"; and (3) "are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint*, 514 U.S. at 42.

We hold that the district court's orders do not fall within the collateral order doctrine.

**1.** *Conclusiveness*

None of the district court's three orders is "conclusive," as none constitutes a "final rejection" of Defendants' asserted church autonomy defenses. Not only is the case in a preliminary posture, but the district court also recognized in its denial of Defendants' motion to dismiss that there would be certain issues it "would not consider . . . under the doctrine of ecclesiastical

abstention." *Belya v. Hilarion*, No. 20-CV-6597, 2021 WL 1997547, *4 (S.D.N.Y. May 19, 2021).  At bottom, the orders are not conclusive because they do not bar any defenses, they did not rule on the merits of the church autonomy defense, and they permit Defendants to continue asserting the defense.  It is possible that at some stage Defendants' church autonomy defenses will require limiting the scope of Belya's suit, or the extent of discovery, or even dismissal of the suit in its entirety.  But we cannot and do not prematurely jump into the fray.

We see clear parallels to a Seventh Circuit case where our sister circuit also declined to find appellate jurisdiction under the collateral order doctrine.  When the diocese in that case sought appellate review of the district court's order denying summary judgment for the diocese on a sex-discrimination claim, the Seventh Circuit dismissed the appeal for lack of jurisdiction.  *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1091-92 (7th Cir. 2014).  The Seventh Circuit reasoned it did not have appellate jurisdiction because the district court's order "ha[d] not ordered a religious question submitted to the jury for decision," and in fact the district court "promised to instruct the jury *not* to weigh or evaluate the Church's doctrine."  *Id.* at 1091; *cf. McCarthy v. Fuller*, 714 F.3d 971, 975 (7th Cir. 2013) (holding that an order was collaterally appealable

19

because it sent the religious question of whether party was a nun to the jury).

Here, there are also numerous steps before the finish line of the litigation. And

the district court has shown that it is aware that religious questions may arise --

and could instruct a potential jury to not weigh or evaluate those issues should

litigation progress to that stage. *See Hilarion*, 2021 WL 1997547, at *4 ("[T]he

[district court] will not pass judgment on the internal policies and or

determinations of [ROCOR], nor would it be able to under the doctrine of

ecclesiastical abstention.").

  Even though the Supreme Court has "generally denied review of

pretrial discovery orders" under the collateral order doctrine, *Mohawk Indus.*, 558

U.S. at 108 (internal quotation marks omitted), Defendants argue that putting

"the Church through the discovery that will be necessary to resolve [Belya's]

claims will *itself* violate the [First Amendment]." Defs.-Appellants' Br. at 30

(emphasis added). At essence, their claim is that the district court's orders are

the final decision on whether discovery can proceed; thus, Defendants contend,

the orders constitute a "final rejection."

  But this claim runs afoul of not only the Supreme Court's general

disinclination but also our explicit precedent. We have said that "the finality

requirement cannot be employed to obtain interlocutory review of discovery orders." *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992) (quoting *Xerox Corp. v. SCM Corp.*, 534 F.2d 1031, 1031-32 (2d Cir. 1976) (per curiam)).  And beyond that general restriction, the church autonomy doctrine at most protects against discovery that would intrude into the protected area of the church -- it does not provide religious organizations with blanket protection from discovery.  It therefore does not constitute a "final rejection" of Defendants' church autonomy rights for discovery to proceed into secular components of Belya's claims under neutral defamation laws.  If a discovery request targets non-secular components, a religious association may continue to raise a church autonomy defense with the district court.

In their argument to the contrary, Defendants point primarily to a decision of the Fifth Circuit, *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018).  They claim that "the Fifth Circuit accepted a collateral order appeal to prevent [a church] from having to turn over internal documents."  Defs.- Appellants' Br. at 31.

Defendants misunderstand the Fifth Circuit's law.  *Whole Woman's Health* permitted collateral appeal of religious questions only when a party

sought discovery from a third party and the appeal related "to the predicament of third parties." *Whole Woman's Health*, 896 F.3d at 367-68 (asserting that order falls within collateral order doctrine because, in part, third-party witness appealing "cannot benefit directly from" any post-final judgment relief). Additionally, in a later case, the Fifth Circuit unequivocally pushed back against applying church autonomy defenses when the "conclusion was premature" and "many of the relevant facts have yet to be developed." *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 347, 349 (5th Cir. 2020) (reversing district court's order dismissing case because district court incorrectly "found that it would need to resolve ecclesiastical questions in order to resolve [plaintiff's] claims"), *cert. denied*, 141 S. Ct. 2852 (2021). Here, there is no third party who may be harmed by discovery, and there are many relevant facts that have yet to be developed.

In all, the district court's orders lack the conclusiveness required for appellate jurisdiction under the collateral order doctrine.

**2.** *Questions Separate from the Merits*

Likewise, we conclude that the district court's orders do not involve a claim of right separable from the merits of the action. While it is possible that,

in some circumstances, the church autonomy doctrine can present questions separable from the merits of a defamation claim, at this pre-discovery juncture we cannot say that is the case here. *Cf. Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1036 (10th Cir. 2022) (holding that, for "decisions denying a religious employer *summary judgment* on the 'ministerial exception,'" the "issue is separate from the merits of an employee's discrimination claims." (emphasis added)). Indeed, one of Defendants' principal defenses to Belya's defamation claim is the church autonomy doctrine; they argue that Belya's claims interfere with, for example, church discipline and autonomy by impacting ROCOR's ability to select, supervise, and discipline its ministers. For now, it appears that the case can be litigated with neutral principles of law. *See Jones*, 443 U.S. at 602-03. In the end, however, further proceedings may uncover that the merits do turn on the church autonomy doctrine. Again, it is too soon to say at this point.

### 3. *Effectively Unreviewable on Appeal*

Nor would the value of Defendants' rights be "destroyed if [they] were not vindicated before trial." *Lauro Lines, s.r.l.*, 490 U.S. at 498-99. The church autonomy doctrine provides religious associations neither an immunity from discovery nor an immunity from trial on secular matters. Instead, as the

Seventh Circuit also recognized, the First Amendment serves more as "an ordinary defense to liability." *Herx*, 772 F.3d at 1090.

Other examples also suggest that the church autonomy doctrine is a defense and not a jurisdictional bar from suit. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012) ("[T]he [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar.");[9] *cf. Tucker*, 36 F.4th at 1025 ("The Supreme Court has made clear that the 'ministerial exception' is an affirmative defense to employment discrimination claims, rather than a jurisdictional limitation on the authority of courts to hear such claims.").[10]  A recent Supreme Court denial of certiorari permitted a case to go forward to discovery and trial, notwithstanding the defendant's invocation of the church autonomy doctrine. *See Gordon Coll. v. DeWeese-Boyd*, 142 S. Ct. 952 (2022) (denying certiorari); *see also Tucker*, 36 F.4th at 1036-47 (dismissing an interlocutory appeal for lack of jurisdiction and rejecting the argument that the ministerial exception "immunizes

---

[9]     *Hosanna-Tabor* focused on the ministerial exception.  As discussed previously, however, the ministerial exception is one component of church autonomy.  *See Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2060.

[10]    The Tenth Circuit in *Tucker* acknowledged that the ministerial exception was one part of the "broader church autonomy doctrine" and explained that its analysis was constrained to the "ministerial exception."  36 F.4th at 1028.

a religious employer from suit on employment discrimination claims").  In his concurrence to the denial of certiorari, Justice Samuel Alito emphasized that the "interlocutory posture" of the case would "complicate" the Court's review, and that nothing "would preclude [defendant] from . . . seeking review in [the] Court when the decision is actually final." *Gordon Coll.*, 142 S. Ct. at 955 (Alito, *J.*, concurring) (internal quotation marks omitted).  Immediate appellate review is not the proper avenue for parties seeking to assert a church autonomy defense.[11]

   Defendants argue that the parallels between qualified immunity and church autonomy mean church autonomy is also an "immunity from discovery and trial" and thus falls within the collateral order doctrine.  Defs.-Appellants' Br. at 50.  To that end, Defendants and amici offer a handful of cases comparing the church autonomy defense with qualified immunity in § 1983 cases.[12]  But their

---

[11] One proper avenue is, as discussed, appealing from the final judgment of the district court.  Another may be a writ of mandamus.  *See* 28 U.S.C. § 1651(a).  We have previously granted such a writ to a religious association that did not meet the requirements for a collateral appeal.  *See In re Roman Cath. Diocese of Albany*, 745 F.3d 30, 35 (2d Cir. 2014) (per curiam).  There, the religious association argued it would suffer harm if discovery proceeded even though personal jurisdiction remained unclear.  *Id*.

[12] Although the context in which the comparison was used varies between cases, each case does draw explicit parallels between qualified immunity and church autonomy.  The Seventh Circuit drew the comparison between church autonomy and immunity when considering appellate jurisdiction.  *See McCarthy*, 714 F.3d at 975 ("[T]he district judge's ruling challenged by the plaintiffs [is] closely akin to a denial of official immunity.")  There are also some cases discussing motions to dismiss.  In

analogy falls flat on a crucial point.  It is true that a district court's order denying qualified immunity is an immediately appealable collateral order -- but only "to the extent that it turns on an issue of law."  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  The presence of factual questions means we lack appellate jurisdiction to review a denial of qualified immunity.  *See Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020).

The orders appealed here involve the existence of many genuinely disputed fact questions.  The Supreme Court has explained that:

> [A]n interlocutory appeal concerning [triable issues of fact] in a sense makes unwise use of appellate courts' time, by forcing them to decide in the context of a less developed record, an issue very similar to one they may well decide anyway later, on a record that will permit a better decision.

*Johnson v. Jones*, 515 U.S. 304, 317 (1995).  The defamation claims asserted here hinge on crucial questions of fact, and, as the district court recognized, there are

---

holding that the proper motion to dismiss for a church autonomy defense is under Federal Rule of Civil Procedure 12(b)(6), the Tenth Circuit wrote that "the ministerial exception, like the broader church autonomy doctrine, can be likened 'to a government official's defense of qualified immunity.'"  *Skrzypczak v. Roman Cath. Diocese of Tulsa*, 611 F.3d 1238, 1242 (10th Cir. 2010) (quoting *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 652 (10th Cir. 2002)).  In discussing the Tenth Circuit *Bryce* decision, the Third Circuit added that the church autonomy doctrine is "akin to a government official's defense of qualified immunity."  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

numerous "disputes as to whether the factual situation presented fits into the [church autonomy doctrine]." *Belya*, 2021 WL 2809604, at *2. Decidedly non-ecclesiastical questions of fact remain. For example, did the purported signatories actually sign the letters? Were the December 10 and January 11 letters stamped with Metropolitan Hilarion's seal? If so, who stamped them? Was the early January letter on Archbishop Gavriil's letterhead? More broadly, did Belya forge the letters at issue? These are outstanding secular fact questions that are not properly before us -- and would not require a fact-finder to delve into matters of faith and doctrine.

Accordingly, we hold that the district court's orders are not reviewable on interlocutory appeal under the collateral order doctrine.

## CONCLUSION

For the reasons set forth above, we lack jurisdiction to hear this appeal. Accordingly, we GRANT Belya's July 15, 2021, motion to dismiss. The appeal is DISMISSED, and the temporary stay granted September 2, 2021, is VACATED.