**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------X
                                       :

ALEXANDER BELYA,                      :      INDEX NO.: 20-cv-6597 (AS)
                                         :
                  Plaintiff,        :
                                       :      **NOTICE OF MOTION**
             -against-          :
                                       :

HILARION KAPRAL a/k/a METROPOLITAN    :
HILARION; et al.,                       :
                                       :
                 Defendants.     :
                                       :
------------------------------------------------------------------------------X

      **PLEASE TAKE NOTICE** that upon the Declaration of Oleg Rivkin, the Exhibits annexed

thereto, and the accompanying Memorandum of Law, and all prior proceedings, pleadings and

filings in this action, Plaintiff Alexander Belya will move this Court on such date and in such

place as will be directed by the Court, for an order: (a) directing that Plaintiff's Requests for

Admission are deemed admitted by Defendants pursuant to Fed. R. Civ. P. 36(a)(6); (b)

imposing sanctions, including attorney's fees and costs pursuant to Fed. R. Civ. P. 26(g)(3) and

Fed. R. Civ. P. 37(c); and (c) granting Plaintiff such other and further relief as to the Court

deems just and proper.

Dated:  May 7, 2024

                              RIVKIN LAW GROUP pllc

                              _/s/ Oleg Rivkin_____
                              BY: Oleg Rivkin (OR 1331)

                              48 Wall Street, Suite 1100
                              New York, New York 10005
                              (201) 362-4100
                              Email: or@rivkinlawgroup.com
                              *Attorneys for Plaintiff*
                              *Alexander Belya*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------------X
                         :

ALEXANDER BELYA,              :     INDEX NO.: 20-cv-6597 (AS)
                         :

              Plaintiff,      :
                         :

             -against-       :
                         :

HILARION KAPRAL a/k/a METROPOLITAN   :
HILARION; et al.,               :
                         :

             Defendants.    :
                         :
----------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DEEM GENUINENESS OF DOCUMENTS
## ADMITTED AND FOR SANCTIONS

PLAINTIFF, ALEXANDER BELYA ("Belya"), by his undersigned counsel, submits this

memorandum of law in support of Plaintiff's motion under Fed. R. Civ. P. 36(a)(6) for an order

that the genuineness of four letters central to this action, and the genuineness of the signatures

on these letters, is deemed admitted by Defendants, and for sanctions, including attorney's fees

and costs, pursuant to Fed. R. Civ. P. 26(g)(3) and Fed. R. Civ. P. 37(c).

## INTRODUCTION

At the outset of discovery, on November 6, 2023, Plaintiff served on each of the ten

Defendants Requests to Admit the genuineness of four letters that are at the heart of this action,

as well as the genuineness of the signatures on these letters.

On December 5, 2023, each Defendant served his response.  In his response, each

Defendant denied the genuineness of each of the four letters and the signatures on them with a

single word: "Denied."  Forty denials in all. The denials were consistent with Defendants'

Answer, in which the Defendants likewise asserted that the letters were not "authentic."

Depositions of the ten Defendants then followed, conducted from February through April 2024.  During the depositions, not a single Defendant confirmed *even a single one of the forty denials*.  Not a single Defendant denied the genuineness of a single letter or of the signature on it. As shown in the deposition transcripts, the Defendants' testimony concerning the letters ranged from,  "the document is genuine," to "the signature is genuine," to "I do not claim it is not genuine," to "it appears to be genuine," to "I cannot dispute the signature," to "it is probably genuine," to "I don't know if it is genuine," to "it is possibly not genuine, but I don't know," to "I don't know for a fact one way or another," to "I can't confirm or deny it is genuine," to, most remarkably, "I have never seen the letter before today," *etc*.

In short, the depositions made clear that Defendants' Responses to Requests for Admissions were flagrantly false, knowingly and willfully so.

Plaintiff's counsel had spent many hours organizing discovery and preparing for depositions based on Defendants' flat denial of the genuineness of the key documents in this case. Much of this time was wasted, needlessly so, due to the false responses. Had the responses been truthful, much of legal time spent to date on discovery would not have been necessary. Some of the Defendants would not have been deposed at all.

In this motion, Plaintiff seeks an order of the Court deeming the genuineness of the letters as admitted and, more importantly, seeks sanctions, including attorney's fees and costs, resulting directly from Defendants' false Responses.

## **RELEVANT FACTS**

1.   The facts relevant to this motion are set forth in the accompanying Declaration of Oleg Rivkin ("Rivkin Dec.") and the Exhibits annexed thereto, and are incorporated here by reference. For the sake of convenience and clarity, the salient facts are summarized below.

2. At the heart of this action are four letters – three by Metropolitan Hilarion (now deceased), and one by Archbishop Gavriil (non-party) ("Four Letters"). Plaintiff's action for defamation is predicated on the public accusation by the Defendants that Plaintiff had forged at least three of these letters.

3. The genuineness of the four letters and, more specifically, the genuineness of the signatures on them constitutes a central issue in this litigation. As stated by the Court of Appeals in its decision of August 17, 2022, "*[d]ecidedly non- ecclesiastical questions of fact remain. For example, did the purported signatories actually sign the letters? Were the December 10 and January 11 letters stamped with Metropolitan Hilarion's seal? If so, who stamped them? … More broadly, did Belya forge the letters at issue?*" [Rivkin Dec. Ex. B, p. 27].

4. The Four Letters, all written in Russian, are as follows: (a) letter dated December 10, 2018, from Metropolitan Hilarion to Patriarch Kirill ("***Hilarion's December 10 Letter to Kirill***"); (b) letter dated December 10, 2018, from Hilarion to Plaintiff ("***Hilarion's December 10 Letter to Belya***"); (c) letter from Archbishop Gavriil to Hilarion of January 2019 ("***Gavriil's Letter***"); and (d) letter from Hilarion to Kirill, dated January 11, 2019 ("***Hilarion's January 11 Letter to Kirill***"). The Four Letters are quoted in English translation in the Complaint. [Rivkin Dec. Ex. A, ¶¶ 28, 29, 31, 33, 34 and 35]. The Four Letters themselves are annexed to the Rivkin Declaration as Exhibits C, D, E and F].

5. In their collective Answer filed in this action, Defendants denied the authenticity of each of the Four Letters. [Rivkin Dec. Ex. G, ¶¶ 28, 29, 31, 33, 34 and 35].

6. As the first order of business in discovery, on November 6, 2023, Plaintiff served on each Defendant a Request for Admission ("Request"), requesting that each Defendant admit the genuineness of each letter and the genuineness of the signature on the letter. [Rivkin Dec. ¶¶ 8-10, Ex. H].

7.   On December 5, 2023, each Defendant served his Answer to the Request. As to each of the Requests, each Defendant answered with a single word: "***Denied***."  All together there were forty one-word denials – ten defendants, four denials each. Defendants interposed no objections to the Requests. [Rivkin Dec. ¶ 11, Ex. I].

8.   Having received Defendants' Responses, Plaintiff's counsel prepared to conduct discovery based on the understanding that the Defendants were denying the genuineness of the Four Letters and the signatures on them.  After document discovery was completed, each of the ten Defendants was deposed over a two-month period between February 13 and April 15, 2024.

9.   The deposition testimony of each Defendant flatly contradicted his denial of the genuineness of the Four Letters and the genuineness of the signatures on them.

**Testimony of Olkhovsky**

10.  Defendant Olkhovsky testified that Hilarion's December 10 Letter to Kirill, was in fact genuine, as was the signature and the seal on it, and that he does not contend that someone other than Hilarion had written or signed the letter.  He further testified that the signature on Hilarion's December 10 Letter to Belya was also genuine. He further testified that Gavriil's Letter contains Gavriil's signature but that he did not "see him sign it," and further conceded that he does not contend in this litigation that Gavriil did not sign the letter. Finally, Olkhovsky testified that Hilarion's signature on Hilarion's January 11 Letter to Kirill was also genuine. [Rivkin Dec. ¶¶ 13-17, Ex. J].

**Testimony of Potapov**

11.  Defendant Potapov testified that he had no reason to believe that the signature of Hilarion on the two December 10 letters or the January 11 letter was anything but genuine.  He further testified that he had "no way of knowing" whether Gavriil had signed the Gavriil Letter, and had never spoken to him about it. Remarkably, Potapov testified that *he had never seen*

Hilarion's December 10 Letter to Belya or Hilarion's January 11 Letter to Kirill. [Rivkin Dec. ¶¶ 18-22, Ex. K].

**Testimony of Straut**

12.   Defendant Straut testified that the first time he had seen three of the Four Letters was the day before his deposition, which took place on February 16, 2024, in preparation with counsel. He also testified that he did not know whether anyone other than Hilarion wrote the letters, signed them or placed the seal on them.  He further testified that he did not know whether Gavriil's signature on Gavriil's Letter was genuine and that he had never discussed the letter with Gavriil. Straut basically knew nothing about the Four Letters. [Rivkin Dec. ¶¶ 23-28, Ex. L].

**Testimony of Antchoutine**

13.   Defendant Antchoutine testified that the signature and seal on the two December 10 letters, and Hilarion's January 11 Letter to Kirill were indeed genuine. As to Gavriil's Letter, Antchoutine testified that it "appears to be signed" by Gavriil, but that he does not know whether it is a genuine signature, even though "it looks like it." [Rivkin Dec. ¶¶ 29-33, Ex. M].

**Testimony of Dmitrieff**

14.   Defendant Dmitrieff testified that the first time he had seen any of the Four Letters was just a few days before his deposition. He further testified that he did not know whether the signatures were genuine because he was "not present" when they were signed, but claimed there was "a possibility" they were signed by someone else, admitting that he simply did not know. Dmitrieff did not know whether anyone other than Hilarion had written the letters. [Rivkin Dec. ¶¶ 34-38, Ex. N].

**Testimony of Lukianov**

**15.**  Defendant Lukianov testified that he did not know whether Hilarion's signatures on the two December 10 letters was genuine. He testified that Hilarion's signature on the January 11 letter was indeed genuine and that he does not believe that someone other than Hilarion had written the letter.  Regarding Gavriil's Letter, Lukianov testified that the signature on the letter was genuine, that he believed that Gavriil had signed the letter, but that the letter was false in substance and that Gavriil had knowingly signed a letter that was false. [Rivkin Dec. ¶¶ 39-43, Ex. O].

**Testimony of Gan**

**16.**  Defendant Gan testified as to Hilarion's December 10 Letter to Kirill, that "it looks like his [Hilarion's] signature," but that he did "not know if he signed it or not." Concerning's Hilarion's January 11 Letter to Kirill, Gan testified that the signature "looks like his [Hilarion's] signature," but that he "questions" the letter because it was "unauthorized by the Synod of Bishops." When pressed, Gan admitted that he did not know whether anyone other than Hilarion had signed or sealed the letter. Concerning Hilarion's December 10 Letter to Belya, Gan testified that the signature "looks like" Hilarion's signature, but that, because he "wasn't there when it was written," he did not know whether Hilarion had in fact signed it. Finally, Gan confirmed that he had written in an email in November 2019 that Gavriil had "admitted to signing" Gavriil's Letter. [Rivkin Dec. ¶¶ 44-48, Exs. P, Q].

**Testimony of Temidis**

17.  Defendant Temidis testified unequivocally that he does not claim that Hilarion's signature on any of his three letters is anything but genuine, that he has no reason to doubt that it is genuine, and that he has no evidence that anyone other than Hilarion had written the

letters. As to Gavriil's Letter, Temidis stated that it was not his testimony that the signature was not genuine, and that it "looks just like his [Gavriil's] signature." [Rivkin Dec. ¶¶ 49-53, Ex. R].

**Testimony of Synod's 30(b)(6) Witness**

18.  Defendant Synod, through its 30(b)(6) witness, Bishop Irenei, testified that it was "a possibility" that the letters were forged, but that he did not know, and that he "cannot say it is forged."  "We can neither affirm or deny the authenticity, that's the nature of not knowing." "We cannot know whether he physically signed it or not." Irenei also testified that the first time he had seen Hilarion's December 10 Letter to Belya was sometime in February of this year, a month or so before his deposition, more than two months after the Synod's responses to the Requests. Regarding Gavriil's Letter, Irenei testified that the signature "appears to be" that of Gavriil, but that he "do[es] not know" and "can't answer definitively." [Rivkin Dec. ¶¶ 54-58, Ex. S].

**Testimony of EAD's 30(b)(6) Witness**

19.  Defendant EAD, through its 30(b)(6) witness, Mark Mancuso, testified that he did not know whether Hilarion had signed the two December 10 letters. He further testified that he did not know if Gavriil's signature was genuine, but that it was not his testimony that Gavriil did not write the letter. As for the January 11 Letter, Mancuso testified that the first time he had seen it was at the deposition and knew nothing about it. [Rivkin Dec. ¶¶ 59-63, Ex. T].

## ARGUMENT

### A.  **Defendant's Responses to Requests Violate Rule 36**

Fed. R. Civ. P. 36(a)(4) provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the

party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

By no reasonable measure do any of Defendants' one-word denials comply with these requirements. Plainly, the denials were false.  All of the Defendants' deposition testimony concerning the Four Letters fell into two general categories:  "*The letters are genuine,*" and "*I don't know,*" expressed with some variation of the following:

- "the letter and signature are in fact genuine,"
- "there is no reason to believe it is not genuine,"
- "I do not claim it is not genuine,"
- "it appears to be genuine,"
- "it appears to be signed by him,"
- "I cannot dispute his signature,"
- "it is probably genuine,"
- "I don't know if it is genuine,"
- "I did not see him sign it,"
- "it is possibly not genuine, but I don't know,"
- "it looks to be genuine,"
- "I don't know for a fact one way or another,"
- "there is no way of knowing if it is genuine,"
- "I didn't see him sign the letter so I don't know;"
- "I can't confirm or deny it is genuine,"
- "there is no reason to doubt it is genuine,"
- "I cannot say the letter was forged,"
- "I have never seen the letter before,"
- "it is impossible to know,"
- "I only saw the letter recently,"
- "I am seeing the letter for the first time now."

The testimony demonstrates that Defendants had utterly failed to comply with the very specific and unambiguous rules set forth in Fed. R. Civ. P. 36(a)(4).

"When assessing the sufficiency of a party's responses, a court considers whether the response meets the substance of the request and whether any qualifications are demanded by, and made in, good faith." *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 1457142 at * 5 (S.D.N.Y. May 26, 2009).

Given the Defendants' testimony, it is impossible to deem their forty blanket denials as having been interposed in good faith.  Not a single Defendant had confirmed or reiterated at his deposition even a single one of the denials in the Response.  Not a single Defendant had denied in his deposition testimony the genuineness of a single letter or of the signature on it. The lack of good faith in the Responses is amplified by the facts that a number of Defendants *had not even seen* the letters at the time they denied their genuineness. Some did not even see the letters until the moment they were asked about them at the deposition. Defendant Gan's Response had denied the genuineness of Gavriil's Letter even though in his own email, written four years earlier, he had written that Gavriil had "confessed" to signing that same letter [Rivkin Dec. ¶ 48, Ex. Q]. The Defendants' lack of good faith in failing to comply with Rule 36 is manifest.

**B.  <u>The Court Should Order that the Requests are Deemed Admitted</u>**

Rule 36(a)(6) provides in relevant part:

> On finding that the answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.

This is not a situation where, as sometimes happens, parties hedge in their responses to requests for admissions, objecting to, qualifying their answer, or evading the question that is being asked, leaving themselves wiggle room to avoid getting pinned down.  The Responses here were flat-out falsehoods, each and every one of them. And these falsehoods did not go to some minor or peripheral issue in the litigation, but to the very heart of it. The Requests were served at the very outset of discovery. All subsequent discovery, all of Plaintiff's counsel's preparation and discovery work, were predicated on express and unambiguous denials that the

Four Letters were genuine. It is difficult to conceive of a more blatant violation of the obligations imposed by Rule 36.

Plaintiff submits that the appropriate remedy here is to deem the Requests admitted. Allowing Defendants to amend their Responses at this stage, after fact discovery has closed and after each Defendant had been deposed, would severely prejudice the Plaintiff, as he would be foreclosed from examining the Defendants on any amended responses. Even if the Court were to reopen discovery and allow Plaintiff to re-depose the Defendants on their amended responses, this would in effect bestow on Defendants a benefit from their willful failure to comply with Rule 36, by giving them another bite at the apple.  Defendants would then have another opportunity – two opportunities, in fact: an amended response and another deposition – to spin their positions concerning the genuineness of the Four Letters. This would also subject Plaintiff to additional and significant expenses and would further delay the litigation. Plaintiff should not suffer the consequences of Defendants malfeasance.  Plaintiff followed the rules; Defendants did not.

As things stand now, Plaintiff has ten Responses from ten Defendants, all of which are contradicted by those very Defendants' deposition testimony. Taking the most obvious example, Olkhovsky's, Antchoutine's and Lukianov's direct admissions in their testimony that the letters and signatures are genuine cannot be reconciled with their denials of that very genuineness in the Responses. Neither can Temidis's testimony that he does not claim the letters to be anything but genuine be reconciled with his Responses in which he claims precisely the opposite.  Neither can Potapov's testimony that there is no reason to believe that the letters are not genuine be reconciled with his one-word "denied" in the Responses.  The same is true for *every Defendant's testimony.*

Fact discovery is now concluded and the parties are commencing expert discovery.  The expert reports are due in one month.  Had Defendants' Responses been truthful, or at least consistent with their deposition testimony, Plaintiff would not likely to have needed to engage a forensic expert on the issue of the genuineness of the Four Letters. Under the circumstances, it is unfair to put Plaintiff through that expense going forward. Deeming the Requests admitted is appropriate and would obviate the need for a forensic expert.

C. **The Court Should Impose Sanctions, Including Costs and Attorney's Fees**

Fed. R. Civ. P. 26(g)(1)(A) provides:

By signing [a discovery response], an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (A) with respect to a disclosure, it is complete and correct as of the time it is made …

Rule 26(g)(3) provides:

If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

The Responses were not "complete and correct as of the time [they] were made."  They were plainly false. Given that the testimony of each of the ten Defendants was entirely at odds with their Responses, a "reasonable justification" for the failure to provide "complete and correct" responses could not possibly exist.

Plaintiff's expenses, including attorney's fees, stemming directly from the false Responses are at least the following:

(a)     Many lawyer hours spent by Plaintiff's counsel preparing for the ten depositions, with substantial portion of the preparation spent on dealing with the threshold issue of the case: whether the Four Letters and the signatures on them were genuine. As a consequence of

Defendants' failure to provide truthful Responses, the scope of counsel's work  was increased significantly from what it would have been had the Responses been truthful. Counsel organized discovery and prepared for depositions on the understanding that each of the Defendants was disputing the genuineness of the Four Letters.  As any lawyer knows, preparing to depose a witness who has denied that a key document is genuine is very different from preparing for a witness who admits it to be genuine, which, in turn, is different from deposing one who doesn't know one way or the other.  Multiply this by ten witnesses – each witness with his own individual position within the organization, his own perspective, his own involvement in the events that led to this action – and the amount of preparation time multiplies substantially, as was the case here. Moreover, had the Responses been truthful, counsel would have likely not deposed several of the Defendants at all. Not only would legal time not have been expended, but transcript costs would not have been incurred as well. Counsel also spent time consulting with handwriting experts on the issue of the signatures' genuineness. The time counsel spent on dealing with issues of genuineness was at the expense of time that could have been spent dealing with other issues in the case. The Defendants' false Responses not only increased the amount of legal work, but diverted counsel's work down a path which Defendants knew was pointless and wasteful, since none of the Defendants ended up denying the genuineness of the documents come their depositions.  [Rivkin Dec. ¶12, 64].

(b)     Lawyer hours spent on the actual examinations concerning the genuineness of the Four Letters, which would not have been expended had the Responses been "complete and correct." Indeed, had Defendants been truthful in their Responses, some of them would likely not have been deposed at all. [Rivkin Dec. ¶ 64].

(c)     Cost of deposition transcripts, which would not have been incurred had the Responses been "complete and correct."

(d)     Legal time incurred in preparing this motion.

Under the circumstances, it is reasonable that the Defendants bear these costs.

Defendants understood perfectly well that their false denials of genuineness created substantial

needless extra work and cost for Plaintiff and his counsel. They should be required to

compensate the Plaintiff.

Further, Fed. R. Civ. P. 37(c) provides:

If a party fails to admit what is requested under Rule 36 and if the requesting
party later proves a document to be genuine or the matter true, the requesting
party may move that the party who failed to admit pay the reasonable expenses,
including attorney's fees, incurred in making that proof. The court must so order
unless:

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might
prevail on the matter; or

(D) there was other good reason for the failure to admit.

By its terms, Rule 37(c) limits attorney's fees and expenses to those incurred in proving

that a document whose genuineness was not admitted was in fact genuine.  Such proof would

normally come at trial, and would include, in addition to legal fees, expert-related expenses as

well.  However, in this case, given the compelling reason to deem the Requests admitted, as

submitted above, an award of attorney's fees and costs incurred by the Plaintiff to date,

including time spent on discovery which established the falsity of the Responses, as well as on

this motion, is appropriate.  None of these fees and costs would have been incurred had the

Defendants been truthful in their Responses.

Further, none of the exceptions in Rule 37(c) apply: Defendants had never objected to the

Requests; the Requests went to a central issue in this litigation; the deposition testimony shows

that Defendants did not have "reasonable ground" to deny the genuineness of the letters; and

there was no good reason whatever for Defendants to have responded with denials.

## CONCLUSION

For the foregoing reason, Plaintiff's motion should be granted.

Respectfully submitted,

RIVKIN LAW GROUP pllc


By: __/s/ Oleg Rivkin_____
          Oleg Rivkin (OR 1331)

48 Wall Street, Suite 1100
New York, New York 10005
Tel: (201) 362-4100
*or@rivkinlawgroup.com*
*Attorneys for Plaintiff*
*Alexander Belya*