UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

ALEXANDER BELYA,

                        Plaintiff,

               -against-

HILARION KAPRAL a/k/a METROPOLITAN
HILARION; NICHOLAS OLKHOVSKIY; VICTOR
POTAPOV; SERGE LUKIANOV; DAVID STRAUT;
ALEXANDRE ANTCHOUTINE; MARK MANCUSO;
GEORGE TEMIDIS; SERAFIM GAN; PAVEL
LOUKIANOFF; BORIS DMITRIEFF; EASTERN
AMERICAN DIOCESE OF THE RUSSIAN
ORTHODOX CHURCH OUTSIDE OF RUSSIA; THE
SYNOD OF BISHOPS OF THE RUSSIAN
ORTHODOX CHURCH OUTSIDE OF RUSSIA, and
JOHN DOES 1 through 100,

                        Defendants.

DOCKET NO.: 20-cv-6597

-----------------------------------------------------------------------X

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO STRIKE THE REPORT AND PRECLUDE THE TESTIMONY AT TRIAL OF PLAINTIFF'S PURPORTED DAMAGES EXPERT SAMEER SOMAL

Respectfully submitted,

FEERICK NUGENT MACCARTNEY, PLLC
96 South Broadway
South Nyack, NY 10960

THE BECKET FUND FOR
RELIGIOUS LIBERTY
1919 Pennsylvania Ave NW, Suite 400
Washington, DC 20006

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

REPLY ARGUMENT .............................................................................................................1

    1.  Plaintiff Fails to Resuscitate Somal's Nonexistent Expert Qualifications Sufficient to Opine on Non-Reputational Issues .................................................................................1

    2.  Plaintiff Continues His Circular Attempt to Establish the Reliability of Somal's Fatally Flawed Models ..................................................................................................2

        a.  Plaintiff Fails to Salvage Somal's Web-Visitor Model ............................................2

            i.  Under *Daubert*, Somal Is Not Qualified to Concoct a Damages Model ...........3

            ii.  Plaintiff Fails to Demonstrate Somal's Model Survives *Daubert* ....................4

        b.  Somal's Impressions Model Also Fails ...................................................................5

CONCLUSION ........................................................................................................................5

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Armorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ............................................................................................... 4

*B & R Supermarket, Inc. v. Visa Inc.*,
  2024 WL 4252031 (E.D.N.Y. Sept. 20, 2024) ................................................................... 4

*Davis v. Carroll*,
  937 F. Supp. 3d 390 (S.D.N.Y. 2013), ............................................................................... 3

*Faryniarz v. Nike, Inc.*,
  No. 00 Civ. 2623(NRB), 2002 WL 530997 (S.D.N.Y. Apr. 8, 2002) ................................ 2

*Fratello v. Archdiocese of N.Y.*,
  863 F.3d 190, 203-04 (2d Cir. 2017) ................................................................................. 2

*Grayson v. No Labels, Inc.*,
  599 F. Supp. 3d 1184 (M.D. Fla. 2022) .......................................................................... 4-5

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  528 F. Supp. 2d 303 (S.D.N.Y. 2007) ............................................................................... 1

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................................... 3

*Laumann v. Nat'l Hockey League*,
  117 F. Supp. 3d 299 (S.D.N.Y. 2015). ............................................................................... 5

*La. Wholesale Drug Co. v. Sanofi-Aventis*,
  No. 07 CV 7343(HB), 2008 WL 4580016 (S.D.N.Y. Oct. 14, 2008). ............................... 4

*Ludwin v. Proman*,
  No. 20-CV-81755-RS, 2023 WL 315909 (S.D. Fla. Jan. 19, 2023) .................................. 2

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  No. 10-cv-00976 (CRC), 2017 WL 5905509 (D.D.C. Nov. 28, 2017) .............................. 5

**Statutes**

Fed. R. Civ. P. 26 ..................................................................................................................... 2

Fed. R. Evid. 702 ................................................................................................................. 1, 4

Defendants respectfully submit this reply memorandum in further support of their motion (the "Motion") for an order striking the report and precluding the testimony of Sameer Somal, Plaintiff's purported damages expert pursuant to Federal Rule of Evidence ("FRE") 702.

## INTRODUCTION

Plaintiff's purported expert, Sameer Somal, concocted self-serving models out of whole cloth to justify Plaintiff's exorbitant alleged damages. In Opposition, Plaintiff constructed red herrings and repeated Somal's own circular logic to justify his supposed expert opinion. Plaintiff's attempt to salvage Somal's flawed report must be rejected. Neither Plaintiff nor Somal tether Somal's testimony and report to any established methodology. Under *Daubert* and its progeny, that failure is fatal. And Plaintiff's attempts to second-guess Defendants' religious motives in making religious decisions about a priest run squarely into the First Amendment. Defendants' Motion must be granted.

## REPLY ARGUMENT

**1. Plaintiff Fails to Resuscitate Somal's Nonexistent Expert Qualifications Sufficient to Opine on Non-Reputational Issues**

In their opening papers, Defendants demonstrated that Somal is not qualified to opine on multiple issues, including: (1) opinions of law; (2) states of mind; (3) emotional distress; (4) issues concerning religion; and (5) other psychological issues. Defs.' Mem. Supp. Mot. Strike Somal ("Mem.") 12–13, ECF No. 106. Rather than address the argument head on, Plaintiff constructs a red herring, insisting that "Somal's 'knowledge skill and expertise' in the area of assessing and quantifying reputational damages[1] from online defamation are more than sufficient to satisfy the Rule 702 standard."[2] Pl.'s Mem. Law Opp. Defs.' Mot. Strike Somal ("Opp.") 5, ECF No. 145.

---

[1] Every publication for which Somal claims credit addresses reputation management, not quantification of reputation damages. Opp. 4-5.

[2] Strangely, Plaintiff also tries to claim Somal's testimony on emotional distress damages should come in because "'expert testimony on emotional distress is not required' for the jury to consider it and award damages for it." Opp. 15 (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 528 F. Supp. 2d 303, 320 (S.D.N.Y. 2007)). If expert testimony is not needed, then Somal cannot

1

This is not what Defendants argued, however: With respect to qualifications, Defendants seek to preclude Somal from "provid[ing] competent expert testimony on the legal definition of forgery or other legal matters, and he cannot offer testimony on someone's state of mind, emotional distress or psychological trauma because these areas are outside his area of specialty." Mem. 12.

To that end, Plaintiff tries to dodge *Ludwin v. Proman*, 2023 WL 315909, at *1 (S.D. Fla. Jan. 19, 2023), claiming that "Somal's methodology, specifically as to emotional distress damages, was deemed 'not sufficiently reliable,' because it was based on 'collecting and analyzing past defamation cases,'" but "[n]o such methodology of collecting and analyzing past defamation cases is proffered by . . . Somal here." Opp. 16 (citing *Ludwin*, 2023 WL 315909, at *2).

Unsurprisingly, this argument is another red herring. Defendants argued that, like in *Ludwin*, Somal "claimed that the alleged defamatory materials were 'rooted in malice'" and his opinions "are not expert opinions but rather impermissible legal conclusions derived from Somal's own legal interpretations." Mot. 13. Plaintiff's attempt to redirect *Ludwin* into analysis of Somal's model is an obvious smokescreen to distract from Somal's legal inability to opine on legal issues.

Further, Somal's reliance on Plaintiff's claims of malice fails for three more reasons. First, courts are not permitted to question a church's "asserted reason[s]" for its decisions related to the selection, supervision, and dismissal of a priest. *See* ROCOR Reply MSJ at 3-5 (ECF 150) (quoting, *e.g.*, *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 203-04 (2d Cir. 2017)). Second, Plaintiff has confirmed that Defendants' motivation was fundamentally religious: to "undo Plaintiff's appointment as Bishop of Miami by means of the Sept. 3 Letter." FAC ¶70; Pl.Decl.¶50 (ECF 140) ("principal goal"). That's not malice. Third, Plaintiff's attempts to circumvent Defendants' concededly religious motivation to show animosity just proves his case is not the kind of "purely secular" dispute courts can constitutionally resolve. ROCOR Reply MSJ at 5-6.

2. **Plaintiff Fails to Establish the Reliability of Somal's Fatally Flawed Models**

   a. **Plaintiff Fails to Salvage Somal's Web-Visitor Model**

---

be allowed to testify on the matter. *See* Fed. R. Civ. P. 26; *Faryniarz v. Nike, Inc.*, 2002 WL 530997, at *2 n.1 (S.D.N.Y. Apr. 8, 2002).

2

Plaintiff's attempt to salvage Somal's flawed web-visitor model boils down to two specious claims: (1) "An expert may be qualified on the basis of his or her experience alone;" and (2) "Somal's decision on which sources to include in his sample was based on his expertise and extensive work in repairing, building, and protecting online reputations." Opp. 8, 11. Plaintiff provides no cogent support for these propositions.

### i.      Under *Daubert*, Somal Is Not Qualified to Concoct a Damages Model

None of Plaintiff's citations support his position that Somal can concoct a model to inflate Plaintiff's damages because he is allegedly a defamation expert. Plaintiff cites *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), to claim "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Opp. 11 (citing *Kumho Tire*, 526 U.S. at 156). Plaintiff ignores that *Kumho Tire* rejected that testimony because there was "no indication in the record that other experts in the industry use [the expert's] . . . test," nor "does anyone refer to any articles or papers that validate [the expert's] approach." 526 U.S. at 157. As in *Kuhmo Tire*, Plaintiff does not suggest any other experts use Somal's model or provide independent verification for that model. Somal's asserted experience, without more, is insufficient.

Plaintiff also cites *Davis v. Carroll*, 937 F. Supp. 3d 390, 412 (S.D.N.Y. 2013), to claim that "[s]ometimes, expert testimony does not rest on traditional scientific methods." Opp. 11. Plaintiff provides no evidence that *defamation cases* fall within this exception, nor does he show why Somal falls under this rubric. Moreover, the expert in *Davis* proposed to testify that the defendant's "conduct . . . in which [the defendant] purchased the artwork at issue . . . were consistent with usual and customary practices in the art industry." *Davis*, 937 F. Supp. 3 at 414. Perhaps most importantly, Plaintiff conveniently ignores that the court *excluded* the expert's testimony because he "did not apply any established methodology" to his testimony. *Id.* at 415.

Like in *Davis*, Plaintiff does not even attempt to show that Somal's model conformed to an established methodology. Plaintiff does not show that other experts use Somal's model to calculate reputational damages. Similarly, Plaintiff does not provide peer-reviewed data validating Somal's model. Under *Kumho Tire*'s clear import, Somal's model must be rejected. *See* 526 U.S.

3

at 157; *see also B & R Supermarket, Inc. v. Visa Inc.*, 2024 WL 4252031, at *25 (E.D.N.Y. Sept. 20, 2024) ("With respect to expert testimony that does 'not rely on anything like a scientific method,' the commentary to Rule 702 notes that '[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.'" (citing Fed. R. Evid. 702 cmt. notes)).

### ii. **Plaintiff Fails to Demonstrate Somal's Model Survives *Daubert***

Somal's failure to tether his model to sound methodology requires this Court to reject use of the model. Continuing his circular attempt to salvage Somal's model, Plaintiff parrots Somal's language. Plaintiff insists that "Somal then conservatively estimated that only a small fraction [of visitors to websites] were exposed to the 'forgery' posts." Opp. 7. Yet as Defendants demonstrated, Somal fails to tether that .1% rate to any established methodology. Mem. 15–17. Somal's unsupported insistence that he used a "conservative approach" does not make his model reliable.

Plaintiff claims that the number "is not a 'made up' number, but one that is rooted in [Somal's] 'knowledge, skill and expertise.'" Opp. 9. Plaintiff ignores that "[t]he standard to evaluate non-scientific expert testimony is whether the expert bases testimony upon professional studies or personal experience and employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *La. Wholesale Drug Co. v. Sanofi-Aventis*, 2008 WL 4580016, at *6 (S.D.N.Y. Oct. 14, 2008). Plaintiff and Somal leave the Court guessing as to the link between Somal's supposed knowledge, skill, and expertise and his .1% number, which he applies across the board regardless of if the impression was on the Russian Orthodox Church's official website or Reddit.

Plaintiff also claims that Somal's *ad hoc* choice of website "goes to the weight of his opinion, not admissibility." Opp. 8. Plaintiff provides no support for this argument. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony. *Armorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *see also Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184 (M.D. Fla. 2022) (rejecting web defamation

4

expert's testimony because "[t]he gap between [his] opinions and the data is simply too great to allow the opinions to be presented to the jury"). Plaintiff ignores that Somal's model "is only as reliable as its component parts." *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 316 (S.D.N.Y. 2015). Somal simply leaves the Court and Defendants to guess the methodology underpinning his choice of websites. Because at least two components of Somal's model necessarily fail, this Court must reject Somal's model under *Daubert*.

### b.  Somal's Impressions Model Also Fails

Defendants' opening brief demonstrates that Somal's impressions model fails for the same reason as the web-visitor model. ECF 107 at 17–18. To overcome this outcome, Plaintiff reaches for an out-of-circuit case, *United States ex rel. Landis v. Tailwind Sports Corp.*, 2017 WL 5905509 (D.D.C. Nov. 28, 2017). In *Landis*, the impressions model "is [solely] dedicated to calculating the number of negative impressions." *Id.* at *7. The expert "was able to calculate the 'media impressions' by summing the number of articles multiplied by the reach of each article." *Id.* The website that the expert used "provided the 'reach' of each article." *Id.*

But Somal's model differs in material aspects from the model in *Landis*. *First*, *Landis*'s more restrained model "provide[d] an explanation of the method [the expert] used in reaching the total impressions," and that "methodology . . . is sound and reasonable." *Id.* By contrast, Somal veers far from a validated methodology, incorporating self-selected exogenous factors to pepper his model. *Second*, the *Landis* model solely calculated impressions. But Somal's model not only calculates the number of impressions based on websites that do not provide the reach of each article, it also calculates purported damages. Plaintiff makes no showing that courts accept Somal's chimera model versus a model that merely calculates the number of impressions.

### CONCLUSION

For all of these reasons, the Court should perform its gatekeeping function by striking Somal's report and precluding him from testifying at trial.

Dated: South Nyack, NY
November 8, 2024

5

Respectfully submitted,

/s/ *Donald J. Feerick, Jr.*
Donald J. Feerick, Jr. (DF 3299)
Alak Shah (AS 5301)
Christopher B. Pavlacka (CP 3650)
Feerick Nugent MacCartney, PLLC
96 South Broadway
South Nyack, New York 10960
Tel: 845-454-2000
*dfeerick@fnmlawfirm.com*
*ashah@fnmlawfirm.com*
*cpavlacka@fnmlawfirm.com*

Diana Verm Thomson
Daniel H. Blomberg
THE BECKET FUND FOR
RELIGIOUS LIBERTY
1919 Pennsylvania Ave NW, Suite 400
Washington, DC 20006
Tel: 202-955-0095
*dthomson@becketlaw.org*
*dblomberg@becketlaw.org*

**Attorneys for Defendants**